**HOUSEHOLD FINANCE CORPORATION, a Corporation, Respondent,**

v.

**James M. ROBERTSON, J. Ralph Hutchison, and John A. Williams, as Members of the State Tax Commission of the State of Missouri; M. E. Morris, Director of Revenue, State of Missouri; and Milton Carpenter, as Treasurer of State of Missouri, Appellants.**

**No. 49227.**

Supreme Court of Missouri,

En Banc.

Jan. 14, 1963.

Rehearing Denied Feb. 11, 1963.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Floyd E. Britton, Hubachek & Kelly, Chicago, Ill., E. R. Morrison, John A. Morrison, John R. Gibson, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondent.

HOLLINGSWORTH, Judge.

Defendants, respectively, the three members of the State Tax Commission, the Director of Revenue and the Treasurer of the State of Missouri, have appealed from a summary judgment of the Circuit Court of Cole County declaring void certain assessments for Missouri corporation franchise taxes against plaintiff, granting an injunction against enforcement of the collection of said portion of the taxes based upon said assessments and an injunction against any future assessment of such taxes against plaintiff by use of the same method.

■ Plaintiff's petition alleged and the trial court, among other findings adverse to defendants, held that the uniform method of assessment of such franchise taxes adopted by the Missouri State Tax Commission deprived plaintiff of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 10, of the Constitution of Missouri, V.A.M.S. Consequently, this court has exclusive jurisdiction of the appeal because construction of certain of the revenue laws of the State is involved, state officers as such are parties, and the case involves construction of the Constitutions of the United States and of this State. Article V, § 3, Constitution of Missouri, V.A.M.S.

The specific questions for determination rest primarily upon the purview and meaning of that portion of § 147.010 RSMo 1959, V.A.M.S., relating to the franchise tax imposed upon foreign corporations doing business in this state, as supplemented by § 147.-030. That portion of § 147.010 in material substance reads:

"Every foreign corporation engaged in business in this state * * * shall pay an annual franchise tax to the state of Missouri equal to one-twentieth of one per cent of the par value of its outstanding shares and surplus employed in business in this state, * * * and for the purposes in this chapter such corporation shall be deemed to have

employed in this state that portion of its entire outstanding shares and surplus that its property and assets in this state bear to all its property and assets wherever located."

It should also be borne in mind that the first portion of § 147.010 makes identical provisions for payment of franchise taxes by domestic corporations; and that § 147.030 in material substance reads:

"1. The state tax commission shall, on or before the first day of November in each year, determine from the facts reported, and from any facts within or coming to its knowledge the proportion of the outstanding shares and surplus of each corporation employed in business in this state and the amount of tax each corporation is liable to pay * *."

Defendants' basic contention is that implicit in the second clause of the above quoted portion of § 147.010 is the meaning: "* * * and for the purposes in this chapter such corporation shall be deemed to have employed in this state that portion of its entire outstanding shares and surplus that its property and assets [*employed*] in this state bear to all its property and assets wherever located." Plaintiff insists that the fact that the Legislature did not include the above bracketed word "employed" in the second clause of Par. 2 of § 147.010 shows that had the Legislature intended the phrase "property and assets in this state" to mean "property and assets employed in this state", it had but so to say; and that, therefore, the omission indicates a conscious intention on the part of the Legislature that the word "employed" should be omitted.

■ The trial court, on motion of plaintiff, rendered summary judgment under S. Ct. Rule 74.04, V.A.M.R., on the theory there was no genuine issue as to any material fact. The facts, therefore, are the allegations of the petition as admitted by and pleaded in the answer and in an affidavit and supplemental affidavit filed on behalf of plaintiff.

Plaintiff is a Delaware corporation with its principal place of business and administrative office in Chicago. It is engaged in the business of loaning money. It is authorized to do business in Missouri and, pursuant to such authorization, owns and operates 17 local branch loan offices in Missouri. It also owns all of the capital stock of numerous subsidiary corporations, seven of which are authorized to do business in Missouri, each of which is organized under the laws of Delaware, has its principal office in Chicago and operates a separate loan office in this state.

In February, 1959, plaintiff filed its corporation franchise tax report, which showed, as of December 31, 1958, property and assets in the State of Missouri of the value of $12,444,391.98. According to the report, these assets consisted of cash in the amount of $111,017.16, loans receivable in the amount of $12,231,403.87, office furniture and fixtures in the amount of $75,167.27, and deferred charges in the amount of $26,803.08. Attached to the report was the general balance sheet of plaintiff corporation, showing its total assets, wherever situated, in the aggregate amount of $579,899,711.46, as of December 31, 1958. Among other items, the balance sheet showed cash in the amount of $26,601,884.74. It also showed plaintiff's investment in subsidiaries (including the seven operating in Missouri) in the total sum of $261,333,611.36, consisting of advances and capital stock. Also, as shown by the pleadings, the total amount of interest-bearing advances (loans) made by plaintiff to the seven subsidiary corporations operating in Missouri, as of December 31, 1958, was $4,563,132.00 and plaintiff's investment in the capital stock of said seven subsidiary corporations was $560,000.00.

After the report was filed, the Commission calculated the total value of the property and assets of plaintiff employed in business in this state and necessarily to be included in fixing the franchise tax owed by plaintiff for the year of 1959, so that the total Missouri assets upon which the franchise tax was to be computed were increased from the reported figure of $12,444,391.98 to $18,595,385.00. As a result of that action, plaintiff's franchise tax for the year 1959 was increased by the Commission from $6,222.19 to $9,297.69. This increase was predicated upon computations made by the Commission with respect to three items:

(1) The item of cash employed in Missouri, which was shown on the report as $111,017.16, was increased to $1,138,879.00 by the use of the following formula: The Commission first found the percentage of loans receivable and tangible assets reported by plaintiff as part of its Missouri assets as compared to like items in plaintiff's total balance sheet. This percentage, .042812, was applied to the entire amount of plaintiff's cash, wherever physically located, shown in plaintiff's total balance sheet; and the amount of cash thus computed was substituted for the amount of cash in Missouri reported by plaintiff in its 1959 franchise tax report.

(2) The sum of $560,000.00, comprising plaintiff's investment in the capital stock of its seven wholly owned corporate subsidiaries operating in Missouri, was by the Commission added to the amount shown in plaintiff's return for the reason that all of said capital stock of said seven subsidiaries was acquired by plaintiff at the time of the organization of these corporations. In this connection, it was admitted and agreed that all of the transactions incident to the creation of these corporations took place entirely within the State of Illinois; that the stock in each instance was subscribed for at the time of the organization of these corporations pursuant to an agreement made in Illinois and payment for and delivery of the stock certificates to plaintiff were made in that state; that the money paid as the purchase price of said shares of stock, which was used in Missouri, was taken to this state by the subsidiaries and constituted capital employed by said subsidiaries in Missouri; and that the stock certificates have remained in the possession of plaintiff in Chicago ever since their receipt.

(3) The sum of $4,563,132.00 which constituted the advances made by plaintiff to its seven subsidiaries, organized under the laws of Delaware and operating in Missouri, was by the Commission added to plaintiff's return for the reason that plaintiff admitted that these "advances" constituted interest-bearing *loans* which the subsidiaries became obligated to pay to plaintiff on demand and on which they do pay interest. In this connection, it was also admitted and agreed that all transactions relating thereto were negotiated, agreed to and performed by the officers and agents of plaintiff and the respective subsidiaries in Chicago; that the money represented by these transactions was paid to said subsidiaries in Chicago; that the funds so borrowed, upon being transferred to Missouri by the subsidiaries, was employed by them, respectively, in their business in Missouri; that all payments of interest and principal made to plaintiff upon such advances were made to plaintiff in Chicago; that each of the seven subsidiary corporations filed its own franchise reports in Missouri for the years 1959 and 1960, in which it reported the market value of its property and assets in Missouri without deduction of the amount owed to plaintiff; and that all meetings of the stockholders of such subsidiaries since their organization have been held outside of the State of Missouri.

In December, 1959, plaintiff paid the final assessment of its franchise tax in the amount of $9,297.69 to the Director of Revenue, under protest as to the sum of $3,075.50, which resulted from the increased valuation. Thereafter, in February, 1960, plaintiff filed its corporation franchise tax report for the year 1960, which did not include as part of its Missouri assets as of December 31, 1959, (1) any cash except such as was physically located in Missouri as of December 31, 1959, (2) its investment in the shares of stock in its subsidiaries operating in Missouri, (3) the amount of advances made by plaintiff to such subsidiaries. In June, 1960, plaintiff instituted this action for a declaratory judgment.

During the pendency of the suit, the Commission increased the total amount of plaintiff's property and assets located in Missouri, which plaintiff had listed in its 1960 report at $13,333,306.19, (1) by increasing the cash employed in Missouri, as allocated by the Commission by the same method used for the year 1959, from $127,641.93 to $848,160.68, (2) by adding thereto plaintiff's investments of $560,000.00 in the capital stock of its wholly owned subsidiaries operating in Missouri, and (3) by including the advances made by plaintiff to its said subsidiaries operating in Missouri in the sum of $4,864,858.69. As the result of this increase, the amount of franchise tax due from plaintiff, as determined by the Commission for the year of 1960, was increased from $6,666.65 to $9,739.34. Plaintiff thereupon obtained a temporary injunction to restrain the collection of the sum of $3,072.69, the amount in dispute for the 1960 tax. The injunction required plaintiff to pay into court the sum of $6,666.65, to be delivered to the Director of Revenue and credited to plaintiff's account for 1960 franchise taxes without prejudice to the contentions of defendants as to validity of the remainder of the tax and to pay the further sum of $3,072.69 to the Clerk of the Circuit Court of Cole County to be disbursed upon order of the court following final determination of the cause.

On final hearing of plaintiff's motion for summary judgment, the trial court entered its final decree sustaining plaintiff's motion for summary judgment and granting plaintiff a declaratory judgment declaring that the assessments for Missouri corporation franchise taxes, to the extent increased by the Commission, were invalid, making permanent the temporary injunction theretofore granted and ordering the sum deposited with the circuit clerk returned to plaintiff, enjoining the State Tax Commission from making any further assessments of franchise taxes against plaintiff upon same or similar grounds to those upon which the assessments for 1959 and 1960 were made, and enjoining the Director of Revenue from

attempting to collect franchise taxes theretofore assessed in the manner held invalid by the decree.

The court also specifically found and declared that the method used by the Commission in allocating the cash of plaintiff in determining the value of plaintiff's property and assets employed in Missouri was not authorized by § 147.010; and that (1) the additional cash allocated to Missouri by said method, to wit: $1,027,862.00, had no taxable situs in Missouri and was not capital employed in Missouri; (2) that the shares of capital stock of the seven subsidiary corporations in which plaintiff invested $560,-000.00 had no taxable situs in Missouri and that Missouri had no power to impose any tax measured by the value of such shares as capital employed by plaintiff in Missouri; (3) that the advances made by plaintiff in the sum of $4,563,132.00 to its subsidiary corporations doing business in Missouri had no taxable situs in Missouri and were not employed in this state within the meaning of § 147.010, that Missouri had no power to measure the tax by such advances and that the franchise tax, to the extent measured by the amount of said advances, was not authorized by § 147.010; and (4) that said three increases resulted in an unlawful exaction of franchise taxes to the extent thus assessed against plaintiff and deprived plaintiff of its property without due process of law, in violation of the 14th Amendment to the Constitution of the United States and Article I, § 10, of the Missouri Constitution.

On this appeal, defendants seek reversal of each of the above four enumerated findings and declarations of the trial court.

■ The franchise tax provided for in these sections is not a property tax. Rather is it an excise on the right to do business in this state. Union Electric Co. v. Morris, 359 Mo. 564, 222 S.W.2d 767, 769 [1]; State ex rel. Marquette Hotel Inv. Co. v. State Tax Commission, 282 Mo. 213, 221 S.W. 721; National Leather Company v. Commonwealth of Massachusetts, 277 U.S.

413, 48 S.Ct. 534, 72 L.Ed. 935; Kansas City Southern Ry. Co. v. Reily, 242 La. 235, 135 So.2d 915, 918; Household Finance Corp. v. Director of Division of Taxation, 36 N.J. 353, 177 A.2d 738; Household Finance Corp. v. State Tax Commission, 212 Md. 80, 128 A.2d 640; Household Finance Corp. v. State Tax Commission, 217 Md. 327, 142 A.2d 807.

Section 147.010 expressly declares that each corporation, domestic and foreign, doing business in this state shall pay such a tax upon the basis of its capital stock and surplus employed in business in this state. Section 147.030 declares without qualification that the Tax Commission shall determine the amount of that tax from any facts at hand upon the basis of the proportion of its outstanding shares and surplus *employed in business in this state*. Obviously, the Commission did not levy any tax *upon* any asset of plaintiff without this state; it merely computed the franchise tax imposed under § 147.010 on the basis of one-twentieth of one percent of the par value of plaintiff's outstanding shares and gross assets by it *employed in business in this state*. But plaintiff insists that the phrase "outstanding shares and surplus employed in business in this state", as used not only in § 147.010 but also in § 147.030, supra, does not mean precisely what it says because of the "formula" set forth in § 147.010. Its argument in that respect runs thus: (1) The subject of taxation must be clearly authorized, the plain language of a taxing statute must be applied and the statute strictly construed against the taxing authority; (2) the language of § 147.010 establishes a mandatory formula for computing the franchise tax; and (3) the Commission had no authority to adopt a formula contrary to that set forth in § 147.010; and, therefore, the adoption of a contrary formula is a nullity. If we accepted the accuracy of the premise upon which plaintiff bases its contention that the "formula" adopted by the Commission is not within the meaning of the wording of the provisions of § 147.010 (augmented by § 147.030), when

read in their entirety and in the light of their specifically declared purpose, then plaintiff's position would be sound. As will hereinafter appear, however, we have concluded that the judgment and decree of the trial court was erroneous in disallowing the increase made by the Commission in the item of cash reported by plaintiff as employed by it in this state and in enjoining the Commission henceforth from computing the amount of the corporation franchise tax owed by plaintiff to the State of Missouri for years subsequent to those here directly involved, as required by § 147.030.

■ The word "surplus", as used in the phrase "outstanding shares and surplus" in § 147.010, means the excess of gross assets over the par value of its outstanding shares without deduction of debts or liabilities. State ex rel. Marquette Hotel Investment Co. v. State Tax Commission, 282 Mo. 213, 221 S.W. 721, 722. That case, long followed as the established law of this state, 221 S.W. loc. cit. 724, states: "It certainly is not beyond the power of the Legislature to take the extent of the use of a franchise as a basis for the computation of the franchise tax. That, we think, is the standard adopted by the Legislature in this instance. * * * It is upon the franchise, we reiterate, that the statute here in question levies a tax. The extent of the *use* of the franchise is the basis for the computation of the tax." (Emphasis supplied.) That case dealt with the corporation franchise tax act of 1917, Laws 1917, p. 237, § 1, which to the extent here material was substantially identical with the present language of § 147.010. It, however, involved the franchise tax owed by a domestic corporation which did not employ any part of its outstanding shares and surplus in a foreign state and it did not, therefore, reach the precise question here presented. But it definitely determines that language identical with that set forth in § 147.010 was intended to and did undertake to measure the Missouri franchise tax provided for domestic corporations upon the basis of the amount of

the shares of stock and surplus *used* in its business in Missouri; and its holding, therefore, obviously is applicable to the question here involved.

Both parties refer us to the case of Union Electric Co. v. Morris et al., 359 Mo. 564, 222 S.W.2d 767. The facts in that case, as in the instant case, were not in dispute. Union Electric, a domestic corporation, owned the shares of stock of two Illinois corporations which were not engaged in business in the state of Missouri and none of the property or assets of either of said corporations was located or *employed* in the state of Missouri. In computing the Missouri corporation franchise tax due from Union Electric, the Missouri Tax Commission considered the market value of such stocks as a part of the franchise tax base for the purpose of determining the amount of tax due from respondent. The Circuit Court of Cole County enjoined collection of the tax and the defendants, members of the Tax Commission, appealed. This court, after quoting with approval from the reasoning set forth in the Marquette Hotel case, supra, stated, 222 S.W.2d 767, 769: "The two foreign corporations issuing the stock have legal title to the property and assets in the foreign state, and such foreign corporations, not [Union Electric], are engaged in business in such foreign state. On the other hand, it is admitted that the two Illinois corporations are wholly-owned subsidiary corporations of the respondent. Of course there can be no doubt that corporate shares of stock issued by a foreign corporation and owned and held by a domestic corporation in his state are 'property and assets' of such domestic corporation, but the question here is as to the *location* and employment of such property and assets within the meaning of Sec. 135, supra. [§ 147.010 RSMo 1959]" It also further stated, loc. cit. 770: "There is no suggestion that the shares of stock in question were used in [Union Electric's] business, or that it was in the business of buying and selling stocks. On the other hand, it is admitted that [Union Electric] is 'en-

gaged as a public utility corporation in the business of generating, transmitting, distributing and selling electric energy and steam in the state of Missouri,' and that [it] owns the shares of stock of the two Illinois corporations." The court further noted, loc. cit. 768, that the Commission construed the statute to mean that "*all of [Union Electric's] property and assets in the state are deemed to be employed here.*" But that contention was not sound because, said the court, loc. cit. 772: "Reading and considering the statute as a whole and giving effect to its several provisions, we must hold that [Union Electric] does in fact employ a part of its outstanding shares in business in another state; that the amount evidenced by the market value of the shares of stock held in the two Illinois corporations is not 'property and assets in this state,' nor are such shares of stock 'property and assets in this state' *within the meaning of those words as used in the statute;* that such property and assets were not 'employed in this state'; and that the market value of such shares of stock should not have been included in the tax base for computing the amount of [Union Electric's] corporation franchise tax for said years." (Emphasis supplied.)

Considering the Union Electric opinion in its entirety, we understand it to declare that the physical property of the Illinois corporations was not located in this state and neither was it employed by Union Electric in its business; and neither was it property and assets of Union Electric *in this state for the purpose contemplated in § 147.010.* We also further understand the opinion to hold that in order to be included in computation of the Missouri franchise tax the property must have been *employed* in Union Electric's business in Missouri; we do not understand it to hold, as plaintiff contends, that if the physical property were in fact employed in Union Electric's business in Missouri, it nevertheless should not be included in computing Union Electric's franchise tax on grounds that the situs of the physical assets represented by the shares

of stock was not also in Missouri. Rather do we understand the opinion to hold that the franchise tax imposed under § 147.010 is to be measured by and computed upon the value of its *property and assets employed in business in this state.*

As declared in the Marquette Hotel case, supra, 221 S.W. 721, 722, the cardinal rule of statutory construction is to ascertain the intention of the law-making body and as far as possible to give effect to the intention expressed; and in Union Electric Co. v. Morris, supra, 222 S.W.2d 767, 770, this court said of the statute here under consideration: "In this case the meaning of the questioned words cannot be determined independent of the particular context in which they are used and the subject matter under discussion. The statute must be construed with reference to the particular facts in the case and every word, phrase and sentence must be given some meaning if that can be done." And in 82 C.J.S. Statutes § 323, p. 607, the general rule is thus stated: "If a statute is susceptible of more than one construction, it must be given that which will best effect its purpose rather than one which would defeat it, even though such construction is not within the strict literal interpretation of the statute, * * *."

Viewing § 147.010 in the light of the Marquette Hotel and Union Electric cases, supra, and seeking the actual meaning of the phrase in question in the context in which it is used and the purpose it seeks to serve, we have concluded it means that "such corporation shall be deemed to have employed in this state that portion of its entire outstanding shares and surplus that its property and assets [*employed*] in this state bear to all its property and assets wherever located." So construed, the statute, read in its entirety, is free of ambiguity and accomplishes the intent and purpose of the act as declared in the Marquette Hotel case and quoted with approval in the Union Electric case. To hold otherwise would enable all corporations, domestic and for-

eign, to employ in this state their cash on hand and *used in their authorized business in this state* without paying the corporation franchise tax as required by § 147.010 by the simple expedient of keeping such cash in another state and drawing thereon as their needs required. For example, can the statute mean that either a domestic or foreign corporation engaged in the business of making loans in St. Louis, Missouri, may avoid payment of a portion of the franchise tax imposed under § 147.010 merely by keeping the cash thus employed by it in East St. Louis, Illinois, and drawing thereon as its Missouri commitments required? We think it can not. We hold that the corporation franchise tax imposed under § 147.-010 requires that the cash employed by plaintiff in business in this state, irrespective of its location, shall be included in computing the amount of the tax annually accruing under § 147.010.

In compliance with the duties required of it under § 147.030, supra, the Commission undertook to determine from the facts shown in plaintiff's general balance sheet the amount of cash employed by it in Missouri, irrespective of the state in which the cash was kept. Plaintiff makes no showing that the method by which the Commission made that determination was inherently arbitrary or unreasonable; nor does plaintiff undertake to show or contend that the amount of cash as thus determined by the Commission was in excess of the amount of cash actually employed by plaintiff in Missouri. To the contrary, plaintiff's petition, after correctly alleging the method by which the Commission determined the cash allocable to Missouri in computing the tax due for the years of 1959 and 1960, challenged the legality of that method only on the ground that § 147.010 did not authorize the inclusion of any of plaintiff's assets located outside Missouri (and on the ground that the inclusion of assets outside Missouri in computing plaintiff's franchise tax deprived plaintiff of its property without due process of law). Defendants' answer likewise alleged the method used by it in

determining the cash so employed by plaintiff in Missouri and averred its intention thereafter to so determine the cash employed by plaintiff in Missouri for the purpose of computing the amount of the franchise tax owed by it. In that state of the record, plaintiff moved for summary judgment upon grounds that no material fact issue existed. Consequently, the amount of cash thus determined to be actually employed by plaintiff in Missouri during the years in question, for the purpose of this case, stands admitted. It necessarily follows that the trial court erred in excluding the cash added by the Commission to the tax reports of plaintiff for the years of 1959 and 1960, unless, of course, as plaintiff contends, it was thereby deprived of its property without due process of law. In support of the latter contention plaintiff has cited: Connecticut General Life Insurance Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673; Hans Rees' Sons v. State of North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879; Alpha Portland Cement Co. v. Commonwealth of Massachusetts, 268 U.S. 203, 45 S.Ct. 477, 69 L.Ed. 916; Kennecott Copper Corp. v. State Tax Commission, 5 Utah 2d 306, 301 P.2d 562; State v. Travelers Ins. Co., 256 Ala. 61, 53 So.2d 745; Wallace v. Hines, 253 U.S. 66, 40 S.Ct. 435, 64 L.Ed. 782. It would unduly lengthen this opinion to undertake to discuss the differing facts and statutes considered in those cases. Careful study of them has convinced us that none of them is decisive of the question here presented.

■ Defendants cite and rely upon, among others, not only the decisions of this state in the Marquette Hotel and Union Electric cases, supra, but also the following cases from other states as reflecting the constitutionality of § 147.010 under the due process clauses of the Constitutions of both the United States and the State of Missouri: Kansas City Southern Railway Co. v. Reily, 242 La. 235, 135 So.2d 915, 918; Household Finance Corp. v. State Tax Commission, 212 Md. 80, 128 A.2d 640;

Household Finance Corp. v. State Tax Commission, 217 Md. 327, 142 A.2d 807; Household Finance Corp. v. Director of Division of Taxation, 36 N.J. 353, 177 A.2d 738; National Leather Co. v. Commonwealth of Massachusetts, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935; Butler Bros v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; International Harvester Co. v. Evatt, 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390; Ford Motor Co. v. Beauchamp, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304; Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193; Flint v. Stone Tracy Co., 220 U.S. 107, 165, 31 S.Ct. 342, 55 L.Ed. 389; Kansas City, Fort Scott & Memphis Railway Co. v. Batkin, 240 U.S. 227, 232, 36 S.Ct. 261, 60 L.Ed. 617; Greiner v. Lewellyn, 258 U.S. 384, 387, 42 S.Ct. 324, 66 L.Ed. 676.

We do not understand plaintiff seriously to question defendants' contention that these cases establish both the state and federal constitutionality of § 147.010 if that section means, as we have determined it does, that plaintiff's franchise tax liability is to be determined upon the basis that the portion of its property and assets *employed* in this state bears to its property and assets wherever located. Note that plaintiff's brief significantly says of one of the federal cases cited by defendants: "In National Leather Company v. Commonwealth of Massachusetts, 277 U.S. 413 [48 S.Ct. 534], 72 L.Ed. 935 (1928), the franchise tax was based on the proportion of the 'value of the assets, both real and personal, employed in any business within the Commonwealth' to the value of the total assets of the corporation. *This case thus actually contains the words which defendants wish to add to the clear statutory formula in the Missouri statute*"; and, after discussion of some of the other cases cited by defendants, plaintiff's brief says that in none of them *"was there a departure from the statutory formula similar to that attempted by the defendants here."* (Emphasis supplied.)

The National Leather Co. case, cited supra by defendants, deals with a fact situation and statute admittedly fairly analogous to the facts and statute (as we have interpreted it) with which we here are dealing. In that case, 277 U.S. 413, 423, 48 S.Ct. 534, 536, the court said:

"It is settled law that a State may lawfully impose upon a foreign corporation a tax for the privilege of doing business within its borders which is measured by the proportionate part of its total gross receipts that are received within the State, [State of] Maine v. Grand Trunk Ry. Co., 142 U.S. 217, 228, 12 S.Ct. 121, 163 (35 L.Ed. 994); or by the proportionate part of its total capital stock which is represented by the property located and business transacted within the State, Hump Hairpin Co. v. Emmerson, 258 U.S. 290, 293, 42 S.Ct. 305 (66 L.Ed. 622); American Mfg. Co. v. [City of] St. Louis (C.C.A. [8]), 8 F.2d 447, 450; * * *." And further, 277 U.S. loc. cit. 423, 48 S.Ct. loc. cit. 536: "Here both the commissioner, the administrative officer charged with the enforcement of the statute, and the Massachusetts court, have found that the capital stocks of the two subsidiary companies were employed by the petitioner in carrying on its business within Massachusetts. We find no adequate reason for disturbing this conclusion. On the contrary, looking to the substance of the transactions and not merely to form, we think that the petitioner, through its ownership of the capital stock of the two subsidiary corporations and the control which it thereby exercised over them, did, in a very real and practical sense, employ these stocks as an instrumentality in carrying on its business within Massachusetts—to the extent, at least, that the controlled activities and property of the subsidiary corporations were within the State."

When the decisions cited by defendants are considered in the light of the true meaning and intent of § 147.010, as we have hereinabove determined its true meaning

and intent, we are constrained further to hold that the action of the Commission in increasing the item of cash as determined by the Commission did not deprive plaintiff of its property without due process of law within the meaning of either the Constitution of the United States or of the State of Missouri.

■ This brings us to the more serious question of whether § 147.010 reasonably may be construed to authorize the Commission to include (1) the item of $560,000.00, comprising plaintiff's investment in the capital stock of its seven wholly owned subsidiary corporations, or (2) the item of $4,563,-132.00, constituting moneys advanced by plaintiff to said subsidiaries, for which plaintiff received and held said subsidiaries' interest-bearing obligations to repay on demand.

The argument made by defendants that the $560,000.00 comprising plaintiff's capital stock investment in its wholly owned seven subsidiaries should be included in computing plaintiff's franchise tax liability runs thus: that capital invested by plaintiff in the shares of stock, evidenced by the stock certificates in the subsidiaries, is not employed where the certificates are held (in Chicago) but is employed in Missouri, where the tangible property, assets and business of the subsidiaries are located; that plaintiff employs in its loan business in Missouri that portion of its outstanding shares and surplus consisting of the property and assets of its Missouri subsidiaries constituting plaintiff's capital invested therein and evidenced by the shares of stock; and that looking to the substance of the transactions, this investment is part of plaintiff's assets employed in carrying on its business in Missouri, and therefore was properly taken into account in determining the value of its outstanding shares and surplus employed by plaintiff in Missouri. Their argument that the $4,563,132.00 advanced by plaintiff to its seven subsidiaries should also be included is this: that said advances constitute property employed in

Missouri within the meaning of the statute; that they were made for the purpose of being employed in the loan business in Missouri; that plaintiff conducts its loan business in this state partly through its own branch offices and partly through its subsidiaries; that the money represented by these advances was employed by plaintiff's Missouri subsidiaries in conducting their loan business in Missouri; and that therefore all of such capital of plaintiff is, in any realistic view of the case, employed in the business of Household in Missouri and constitutes a part of plaintiff's outstanding shares and surplus employed in business in this state.

Illustrative of defendants' contentions as above summarized is the case of National Leather Co. v. Commonwealth of Massachusetts, 277 U.S. 413, 48 S.Ct. 534, 72 L. Ed. 935, portions of which are hereinabove quoted. Also cited in that behalf by defendants are the following cases: Union Electric Co. v. Morris, 359 Mo. 564, 222 S.W.2d 767; State ex rel. Marquette Hotel Inv. Co. v. State Tax Commission, 282 Mo. 213, 221 S.W. 721; Kansas City Southern Railway Co. v. Reily, 242 La. 235, 135 So.2d 915, 918; Household Finance Corp. v. Director of Division of Taxation, 36 N.J. 353, 177 A.2d 738; Household Finance Corp. v. State Tax Commission, 212 Md. 80, 128 A.2d 640; and Household Finance Corp. v. State Tax Commission, 217 Md. 327, 142 A.2d 807.

On the other hand, plaintiff contends that the trial court did not err in either of the respects contended by defendants. As to the $560,000.00 of capital stock of the seven subsidiary corporations operating in Missouri, plaintiff points out that it was admitted that this $560,000.00 of capital stock was acquired by plaintiff in transactions that took place entirely within the State of Illinois; that any portion of the subscription price used in Missouri was taken to the state by the subsidiaries and constituted capital employed by said subsidiaries in Missouri; that the stock certificates have remained in the possession of plaintiff in Chicago, Illi-

nois; that each of the subsidiary corporations doing business in Missouri filed franchise tax reports of the market value of their property and assets in the State of Missouri without deduction of the amount owed to plaintiff; and, plaintiff contends, therefore, that the trial court properly held that the stock of those subsidiaries was not subject to the franchise tax. As to the advances made by plaintiff to the aforesaid seven subsidiaries, plaintiff points out that these loans were contracted and made in Chicago, Illinois; that the moneys thus acquired by the said subsidiaries became assets of said subsidiaries, were employed by them in Missouri; that said subsidiaries also pay a franchise tax in this state based on the market value of their property and assets in Missouri without deduction of the amount owed to plaintiff; that the advances (loans) are employed by the subsidiaries in Missouri, are included in determining the franchise taxes assessed by Missouri against each of the seven subsidiaries, as is admitted by defendants.

Cited in support of the contentions thus made by plaintiff, among other cases, are: State v. Shell Pipe Line Corp., 345 Mo. 1222, 1243, 139 S.W.2d 510, 522; Comstock v. Group of Institutional Investors, 335 U.S. 211, 229, 68 S.Ct. 1454, 92 L.Ed. 1911, 1923; State v. National Cash Credit Association, 224 Ala. 629, 141 So. 541; State ex rel. City of St. Louis v. Public Service Commission, 331 Mo. 1098, 56 S.W. 2d 398.

Illustrative of the contention made by plaintiff is the case of State v. National Cash Credit Association, 224 Ala. 629, 141 So. 541, 544–545:

"There is no question that bills receivable, given by borrowers from a foreign corporation conducting a loan business in Alabama, constitute capital employed in business in this state within our franchise tax laws.

"But such is not the case before us. An Alabama corporation duly author-

ized to maintain an office and conduct this branch of its business wholly in another state and with a foreign corporation there doing such business is not doing business in Alabama by such foreign corporation.

\*   \*   \*   \*   \*   \*

" \* \* \* The foreign corporation is not exercising its franchise here, but a local legal entity recognized by law is acting under its franchise, and paying the one franchise tax due for such business."

Each of these cases was decided upon consideration of the true meaning and intent of the particular statute under consideration. They are helpful, but ultimately the questions with which this court is confronted must be decided upon our own determination of the true intent and purpose of § 147.010 (as supplemented by § 147.030) considered in its entirety. We, therefore, turn directly to that section for ascertainment of its purpose and, if we may do so, construe it to the end that such purpose may be effectuated.

At the outset, it should be noted that no contention is made that the separate corporate existence of either of the seven subsidiaries is other than a lawfully created corporation for the purpose of lawfully advancing the financial interests of the owner of its capital stock, plaintiff herein. As hereinabove stated, the language of § 147.-010, which was enacted in 1943, is substantially identical in the respects here involved with the wording of a prior corporation franchise tax statute enacted in 1917, Laws 1917, p. 237. Neither the earlier act nor § 147.010 contains any wording whatever whereby it fairly may be said that the Legislature *intended* that either the cash paid by plaintiff to its subsidiaries operating in Missouri in return for the stock delivered to plaintiff at the time of their incorporation, or the money advanced them by plaintiff, as shown by the admitted facts, should be included in the computation of the amount

of franchise taxes owed by plaintiff to the State of Missouri.

The language used in the statute, as we have interpreted it, imposes a corporation franchise tax therein exacted of *every corporation*, domestic and foreign, engaged in business in this state solely upon that portion of *its* property and assets [employed] in this state bears to all *its* property and assets wherever located. When plaintiff paid its seven subsidiaries the $560,000.00 for their capital stock and thereafter advanced them money, the purchase price of the capital stock and the money became assets of the subsidiaries *and these identical assets were thereafter employed by the subsidiaries in Missouri*, not by plaintiff; and by virtue of the specific provisions of the statute the subsidiaries, not plaintiff, reported and paid the portion of the franchise tax computed and based thereon. (We do not here undertake to decide whether the Legislature could or could not by statute expressly so declaring constitutionally exact of plaintiff a franchise tax computed upon, among other assets, any assets paid in exchange for stock of its wholly or majority owned corporate subsidiaries or moneys advanced to them for use in loaning money. Neither do we undertake to decide whether, upon sustainable finding of facts by the Commission of any unconscionable scheme or plan of any corporation to evade its true liability under § 147.010, through manipulation of its assets employed in this state by means of capital stock ownership in other corporations or otherwise, the Commission could or could not include such assets in computing the tax due from such corporation. See Kansas City Southern Ry. Co. v. Reily, 242 La. 235, 135 So.2d 915; National Leather Co. v. Commonwealth of Massachusetts, 277 U.S. 413, 48 S.Ct. 534, 72 L.Ed. 935.) We simply say that the statute does not warrant this court, in construing its clearly stated language, to declare its purpose to include the imposition of a corporation franchise tax upon plaintiff, computed on assets now owned and employed in Missouri by plaintiff's seven subsidiaries and upon which said subsidiaries pay a corporation franchise tax to this state.

■ Finally, as to that portion of the decree enjoining the Commission from the free exercise of the duties placed upon it under § 147.030, we do not fail to note the comprehensive provisions of S.Ct. Rule 87 relating to declaratory judgments. Should the facts of any case warrant a finding that any state administrative agency was threatening in the future to act in violation of a final judgment of any court of competent jurisdiction, we would not hesitate to affirm injunctive relief properly decreed under the facts. But this case was tried upon an agreed statement of facts. We cannot know what the facts in another case may show. "In taxation matters it has been observed that the doctrine of *res judicata* is of but limited application, inasmuch as the assessment for each year is an independent determination for that year. Each year's tax is a separate transaction and each action relating to each year's tax is a new cause of action. In re Breuer's Income Tax, 354 Mo. 578, 190 S.W.2d 248; Young Men's Christian Ass'n of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497." Cupples-Hesse Corporation v. Bannister, Mo., 322 S.W.2d 817, 823. We think the judgment rendered upon the agreed facts in this case should not serve to tie the hands of the Commission in the attempted performance of its duties under facts that may not be precisely as those herein agreed.

The judgment and decree of the trial court is reversed and remanded for modification to the extent in this opinion stated.

All concur.