Dear Senator Wiggins:
This opinion is in response to your request as follows:
 Does an industrial development corporation have the power and authority under Chapter 349 of the Revised Statutes of Missouri, 1978, as amended, to issue revenue bonds and to loan the proceeds derived from the issuance and sale of such bonds to a corporation for the purpose of refinancing and extinguishing outstanding indebtedness previously incurred by such corporation in connection with the purchase, construction, extension or improvement of a "project" as defined in Chapter 349?
The facts which you present to support your request indicate that The Industrial Development Authority of the City of Kansas City, Missouri (the "Authority") proposes to issue its revenue bonds and to loan the proceeds therefrom to Saint Luke's Hospital of Kansas City, a Missouri not-for-profit corporation (the "Corporation") for the purpose of refinancing and extinguishing certain outstanding indebtedness previously incurred by the Corporation in connection with the purpose, construction, extension and improvement of a hospital facility located in Kansas City, Missouri (the "Hospital"). The Authority is an industrial development corporation which was created and now exists pursuant to Chapter 349 of the Revised Statutes of Missouri, 1978, as amended (the "Act"). The Hospital constitutes a "project" as defined in Section349.010(4) of the Act.
 I.
The Act grants to each industrial development corporation very broad powers for achieving the goals and objectives of the Act. Under Section 349.050,
 The corporation is hereby granted and may exercise all powers necessary or appropriate
to carry out and effectuate its purposes, including but not limited to the following:
. . .
 (4) To promote and solicit industrial and economic development projects as authorized by section 349.010 and to make and execute leases, contracts, releases, compromises and other instruments necessary or convenient for the exercise of its powers or to carry out its purposes;
 (5) To acquire, . . . and to improve, maintain, equip and furnish one or more projects, . . . regardless of whether or not any such projects shall then be in existence;
 (6) To lease to others any of its projects . . . ;
 (7) To sell, assign, mortgage, . . . and convey any or all of its properties . . . ;
 (8) To loan the proceeds of the bonds or temporary notes hereinafter authorized to provide for the purchase, construction, extension, and improvement of projects;
 (9) To issue bonds and temporary notes as hereinafter provided;
. . .
 (15) To sell . . . any of its property or projects to any private corporation. . . . It shall not be necessary for a corporation [referring to an industrial development corporation] to acquire title to any project." Section 349.050, RSMo Supp. 1983. [Emphasis added.]
Missouri courts have long recognized that "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." City of Willow Springs v. Missouri StateLibrarian, 596 S.W.2d 441, 445 (Mo. banc 1980). The extensive enumeration of powers in Section 349.050 of the Act, and especially the usage of the "necessary or appropriate" language quoted above, implies that the Missouri General Assembly intended industrial development corporations to have broad powers for carrying out the promotion of industrial and economic development within the state.
The Missouri Supreme Court, in the only case interpreting the Act, construed the powers of industrial development corporations broadly. One of the arguments in State ex rel. Jardon v. IndustrialDevelopment Authority, 570 S.W.2d 666 (Mo. banc 1978), was that the corporation had no power to mortgage the project to a trustee for the benefit of bondholders. (Under the original version of the Act, Section 349.050 did not expressly grant the power to mortgage the project.) The court looked to Section349.075, which provided: "Any such trust agreement may contain such provisions for protecting and enforcing the rights and remedies of the . . . bondholders as may be reasonable and proper [and] . . . such other provisions as the corporation determines reasonable and necessary. . . ." Jardon, 570 S.W.2d at 678-79, quoting Section349.075, RSMo 1978. The court concluded that a mortgage on the project was "reasonable and necessary," and was therefore within the implied or express powers of the corporation.
From the broad grant of express powers in the Act, the powers implied by the "necessary or appropriate" language, and the liberal interpretation of the Act in Jardon, it appears that the legislature intended for industrial development corporations to have broad, flexible powers in order to carry out the purposes of the Act.
 II.
Section 349.055 of the Act grants industrial development corporations the power to "issue revenue bonds for the purpose of paying any part of the cost of any project or part thereof." It is clear under the Act that industrial development corporations have the power to issue bonds for the purpose of financing projects which have already been completed. Section 340.010 defines "project" as follows:
 [T]he purchase, construction, extension and improvement of plants, buildings, structures, or facilities, whether or not now in existence. . . . Section 349.010(4), RSMo Supp. 1983. [Emphasis added.]
It is also clear that the Authority has the power to purchase a project, "whether or not any such projects shall then be in existence; . . .", Section 349.050(5), RSMo Supp. 1983, and to thenlease or sell such project to another entity. Section 349.050(6) and (7), RSMo Supp. 1983. Since a project already in existence is still a "project" under the Act, it is inevitable that bond proceeds used by the Authority to purchase an existing project from a private corporation would ultimately be applied to reimburse such corporation for its costs incurred, or to extinguish indebtedness previously incurred, in constructing the project. This was the situation in Jardon, where Leggett and Platt, the private corporation, had completed the construction of the project before the bonds were issued. The industrial development corporation inJardon intended to issue its bonds to purchase the project and then lease it back to Leggett and Platt.
Industrial development corporations also loan the proceeds of their revenue bonds to private corporations for projects. Although the original version of the Act contained no express power to loan bond proceeds, the 1980 amendment (L. 1980 H.B. 1582 and 1277) added the power to "loan the proceeds of the bonds or notes . . . to provide the the purchase, construction, extension and improvement of projects; . . . ." Section 349.050(8), RSMo Supp. 1983. There is little practical distinction among a sale/saleback, a sale/leaseback and a loan of bond proceeds under a loan agreement, as contemplated under the Act. In each case, the private corporation has possession and enjoyment of the project, the private corporation makes "payments" (described as installment sale, rental, or loan payments) to the industrial development corporation, and the industrial development corporation pays principal and interest on the bonds. The loan agreement method is often preferable because title remains in the private corporation, the equitable owner, and no deeds need be delivered to or from the industrial development corporation. It is significant that the Act expressly provides that "[i]t shall not be necessary for a corporation [apparently referring to an industrial development corporation] to acquire title to any project." Section 349.050(15), RSMo Supp. 1983.
If an industrial development corporation has the power to issue bonds to purchase existing projects, the proceeds of which bonds are then used to reimburse the corporation for its construction costs or to refinance existing indebtedness incurred by the corporation to pay such costs, and then sell or lease the project back to a private corporation, it is unlikely that the legislature intended that the industrial development corporation should not have the power to accomplish the same objective by a more direct, efficient and less costly method, i.e., a loan of bond proceeds. As the Missouri Supreme Court said in Household Finance Corp. v.Robertson, 364 S.W.2d 595 (Mo. banc 1963),
 If a statute is susceptible of more than one construction, it must be given that which will best effect its purpose rather than one which would defeat it, even though such construction is not within the strict literal interpretation of the statute . . . ." 364 S.W.2d at 602.
 III.
Based on (1) the broad scope of powers expressly granted to the Authority under the Act, (2) the powers implied by the "necessary or appropriate" language therein, (3) prior liberal construction of the powers of industrial development corporations by the Missouri Supreme Court sitting en banc, (4) the definition of "project" under the Act as including facilities already in existence, and (5) the express power under the Act to loan bond proceeds for the purpose of paying the costs of projects, we conclude that the Authority has power under the Act to loan the proceeds of its revenue bonds to the Corporation for the purpose of reimbursing the Corporation for costs previously incurred and extinguishing indebtedness previously incurred in connection with the purchase, construction, extension or improvement of the Hospital.
CONCLUSION
It is the opinion of this office that industrial development corporations organized under the Industrial Development Corporations Act, Chapter 349 of the Revised Statutes of Missouri, 1978, as amended, have the power and authority to issue revenue bonds and to loan the proceeds therefrom to a corporation for the purpose of reimbursing such corporation for costs previously incurred and for refinancing and extinguishing outstanding indebtedness previously incurred in connection with the purchase, construction, extension or improvement of projects as defined under the Act.
Very truly yours,
 JOHN ASHCROFT Attorney General