

# SUPREME COURT OF MISSOURI
## en banc

SOUTHWESTERN BELL TELEPHONE )
COMPANY AS SUCCESSOR IN INTEREST )
TO SOUTHWESTERN BELL TEXAS )
HOLDINGS, INC., )
                 )
           Respondent, )
     v. )         No. SC93900
                 )
DIRECTOR OF REVENUE, )
                 )
           Appellant. )

PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION
The Honorable Karen A. Winn, Commissioner

*Opinion issued January 13, 2015*

The Director of Revenue ("Director") assessed franchise taxes under section 147.010[1] against Southwestern Bell Texas Holdings, Inc. ("Holdings"),[2] a Delaware corporation, for the years 2003, 2004, and 2005. Holdings appealed this decision to the Administrative Hearing Commission ("AHC") pursuant to section 621.050, and the AHC determined that Holdings was not subject to Missouri franchise taxes for this period. The Director now petitions for judicial review of the AHC's decision under section 621.189. This Court has exclusive jurisdiction for this review. Mo. Const. art. V, § 3.

---

[1] All statutory citations are to RSMo 2000 unless otherwise specified.

[2] As a result of a merger on September 30, 2011, Southwestern Bell Telephone Company ("SWBTCo") became the successor in interest to Holdings.

The principal issue in this case is whether a foreign corporation that has been engaged in business in this state and paying Missouri franchise taxes for decades can escape all liability for such taxes – even though it continues to be engaged in the same business in the same locations using the same assets – merely by inserting a wholly owned limited partnership to own and operate those assets. The AHC, reluctantly, concluded that it can. This Court disagrees.

It is immaterial, for purposes of franchise tax liability under section 147.010.1, whether a foreign corporation engaged in business in Missouri does so directly or indirectly through a wholly owned limited partnership. In the former, the corporation employs tangible assets (i.e., the bricks and mortar of the business) to engage in business in this state. In the latter, it employs intangible assets (i.e., its ownership of a limited partnership) to engage in business in this state. In both, however, the corporation is engaged in business in this state, and that is the *only* prerequisite for franchise tax liability under section 147.010.1. Accordingly, the AHC's determination is vacated, and this matter is remanded for further proceedings.

## Background

In 2001, Southwestern Bell Telephone Company ("SWBT") and related entities sought – and received – permission from the Missouri Public Service Commission to undergo a corporate restructuring. First, SWBT created Southwestern Bell Texas Holdings, Inc., a new Delaware corporation. Holdings then created (and became the sole member and 100 percent owner of) Southwestern Bell Telephone Texas LLC ("LLC").

Finally, SWBT converted[3] to a Texas limited partnership named Southwestern Bell Telephone LP ("LP"). Holdings is the sole limited partner (and 99 percent owner) of LP, and LLC is the sole general partner (and 1 percent owner) of LP. Accordingly, Holdings is the sole owner of LP, owning 99 percent directly and the remaining 1 percent indirectly through LLC.

In 2007, the Director of Revenue conducted an audit and determined that Holdings was "engaged in business in Missouri in 2003, 2004 and 2005, through its interest in [LP]." Pursuant to section 147.010, therefore, Holdings was assessed franchise taxes for those years. Holdings appealed the Director's decision to the AHC under section 621.050. The facts were not in dispute and, on cross-motions for summary disposition (i.e., the administrative equivalent of cross-motions for summary judgment), the AHC determined that Holdings was not liable for franchise taxes for these years.

The Director now petitions for judicial review of the AHC's determination. Under section 621.193, this Court must affirm the AHC's decision if:

> (1) it is authorized by law; (2) it is supported by competent and substantial evidence based on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the legislature.

*Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 121 (Mo. banc 2014). In deciding whether a decision is "authorized by law," the AHC's construction of a

---

[3] To accomplish this conversion, Holdings created a new Texas corporation (SWBT-Texas), which was owned by Holdings (99 percent) and LLC (1 percent). SWBT and SWBT-Texas then merged, leaving SWBT-Texas as the surviving entity. Finally, SWBT-Texas converted to LP, with LLC as its general partner (and 1 percent owner) and Holdings as its limited partner (and 99 percent owner).

revenue statute is reviewed *de novo*. *Acme Royalty Co. v. Dir. of Revenue*, 96

S.W.3d 72, 74 (Mo. banc 2002).

## Analysis

The Director makes two determinations when assessing franchise taxes. The first

determination is whether the corporation is subject to tax at all. If so, the second

determination is to calculate the amount of the tax. The threshold question is governed

by the first and third sentences of section 147.010.1, which provide in relevant part:

> [E]very corporation organized pursuant to or subject to chapter 351 or
> pursuant to any other law of this state shall, in addition to all other fees and
> taxes now required or paid, pay an annual franchise tax to the state of
> Missouri …. ***A foreign corporation engaged in business in this state,
> whether pursuant to a certificate of authority issued pursuant to chapter
> 351, RSMo, or not, shall be subject to this section.***

(Emphasis added). [4]

In *Household Finance Corporation v. Robertson*, 364 S.W.2d 595 (Mo. banc

1963), this Court characterized the threshold question of liability for Missouri's franchise

tax this way: "The language used in the statute … imposes a corporation franchise tax

---

[4] Once the threshold question of liability for a franchise tax has been determined, the amount of
that tax is determined by the remainder of the first sentence and the entirety of the second
sentence of section 147.010.1. If the corporation is engaged in business only in Missouri, the
first sentence (adjusted by the fifth sentence) provides that the tax is one-thirtieth (1/30th) of the
corporation's "outstanding shares and surplus." If the corporation is engaged in business in
Missouri and other states, however, the second sentence (adjusted by the fifth sentence) of
section 147.010.1 provides that the tax is one-thirtieth (1/30th) of the company's "outstanding
shares and surplus *employed in this state*." [Emphasis added.] And, because it can be difficult
to determine where each share of stock and each dollar of surplus is "employed," the second
sentence also provides that a "corporation shall be deemed to have employed in this state that
proportion of its entire outstanding shares and surplus that its property and assets employed in
this state bears to all its property and assets wherever located."

4

therein exacted of *every corporation*, domestic and foreign, engaged in business in this state[.]" *Id.* at 607 (emphasis in original). As to the second question, the Court held that the amount of the tax is to be calculated "solely upon that portion of *its* property and assets [employed] in this state bears to all *its* property and assets wherever located." *Id.* (emphasis and brackets in original).[5]

Relying on *Household Finance* and the language of section 147.010, the AHC properly concluded that the "franchise tax is imposed upon the property and assets a corporation ***employs*** – not holds – in this state." [Emphasis added.] It then concluded that, if "this were the only controlling authority, we would find for the Director, ***because [Holdings] clearly 'employs' considerable assets in this state.***" [Emphasis added.] Rather than end its analysis with this obvious – and obviously correct – answer, the AHC continued:

> But ***this*** case is complicated considerably by the fact that [Holdings] employs those assets through a limited partnership. A further question – the issue in this case – is whether the assets of LP should be imputed to the [Holdings] for purposes of franchise tax liability.

(Emphasis in the original).

The AHC noted that it was "incongruous to allow [Holdings] to escape the franchise tax in this situation, particularly when § 147.010 reflects the general

---

[5] The use of brackets around the word "employed" in this quotation signifies the Court's conclusion that the legislature intended the amount of the franchise tax to be calculated with reference to all of the property and assets that a corporation uses to engage in business in this state even if those property and assets are located in another state. The General Assembly later ratified this interpretation by adding the word "employed" in section 147.010.1 precisely where this Court in *Household Finance* inferred it must have been intended.

assembly's evident intent to capture income earned in Missouri by out-of-state corporations." Nevertheless, the AHC concluded that the language of section 147.010.1 compels this result: "While the general assembly evidently intended to impose the franchise tax on foreign corporations employing their assets to do business in Missouri – *which [Holdings] in this case has done* – it did not explicitly do so with respect to a corporation that does so through its interest in a limited partnership." [Emphasis added.]

This Court disagrees. The threshold question in this case is not "whether the assets of LP should be imputed to the [Holdings] for purposes of franchise tax liability," as the AHC framed the issue. Instead, under the plain language of section 147.010.1, the sole requirement that makes Holdings subject to Missouri franchise tax is whether it was "engaged in business in this state." On this question, the AHC properly concluded that Holdings "*clearly 'employs' considerable assets in this state*" and that Holdings employed those assets "*to do business in Missouri*." [Emphasis added.]

Holdings is engaged in the same business in Missouri that SWBT was engaged in before the 2001 restructuring. When SWBT undertook that restructuring, it was not for the purpose of altering its business or the locations in which SWBT engaged in that business. Instead, as SWBT explained to the Missouri Public Service Commission when it applied for permission to do this restructuring, the decision to engage in business through a wholly owned limited

6

partnership rather than directly would "be transparent to SWBT's Missouri customers."

SWBTCo argues that Holdings was not "engaged in business" in Missouri from 2003 to 2005 because Holdings did not (directly) own any assets in this state during that period. But this ignores *Household Finance*, which holds that the amount of the tax is calculated on the property and assets that are ***employed*** here even if they are located elsewhere. *Household Finance*, 364 S.W.2d at 607. The only substantial assets that Holdings owned were its interests in LP (i.e., its 99 percent direct ownership of LP and its 1 percent indirect ownership of LP through LLC). No matter where those assets were located, Holdings employed them as the means by which it engaged in its business in Missouri (and elsewhere) during these years.[6]

For purposes of deciding whether Holdings was subject to franchise tax under section 147.010.1, it does not matter whether Holdings engaged in business in this state by employing a wholly owned limited partnership (i.e., LP) or whether it engaged in business here by employing LP's assets directly.[7] Instead, under the

---

[6] Holdings does not own LP as an investment or for some other reason merely ancillary to its principal business purposes. Instead, its ownership interests in LP are the way in which Holdings continues to engage in the business SWBT engaged in before the 2001 restructuring. The conclusion that Holdings was engaged in the same business in Missouri (and elsewhere) after 2001 that SWBT had been engaged in before 2001 also is consistent with the assurance that SWBT gave to the PSC that the 2001 reorganization would "have no effect on the tax revenues of the State of Missouri[.]"

[7] Because Holdings was engaged in business in Missouri using its own assets (i.e., its direct and indirect ownership interests in LP), it is unnecessary for the Court to decide – and it does not

7

plain language of section 147.010.1, the only thing that matters is whether Holdings was "engaged in business in this state." The Director determined that Holdings was "engaged in business in Missouri in 2003, 2004 and 2005, through its interest in [LP]." The AHC agreed with this as a factual matter but erred in failing to conclude that this made Holdings subject to Missouri franchise taxes.

The flaw in the AHC's analysis was in conflating the threshold question of whether Holdings is liable for franchise taxes (i.e., by deciding whether it was "engaged in business in this state") with the question of calculating the amount of Missouri franchise tax it owes (i.e., by deciding which of Holdings' "outstanding shares and surplus" were employed in this state). Now that the former has been determined, the case will be remanded to the AHC to determine the latter.

To avoid confusion on remand, the Court acknowledges that it may not be easy to apportion Holdings' "outstanding shares and surplus" to calculate the amount of Holdings' taxes for 2003 to 2005. Certainly, that task will not be made any easier by apportioning Holdings' "property and assets," which concept was inserted into the second sentence of section 147.010.1 to provide a simpler alternative for calculating the amount of the tax than apportioning a company's "outstanding shares and surplus." But this does not mean Holdings can escape Missouri franchise tax entirely. Whether the calculation of Holdings' taxes is

decide – whether it can "impute" LP's assets to Holdings to reach this conclusion under the so-called aggregate theory of partnerships.

8

simple or difficult, section 147.010.1 requires that it be done.  And, as the AHC correctly noted, Holdings bears the burden of proving that the amount of the tax calculated in the Director's assessment (and the apportionment on which that calculation was based) is incorrect.

## Conclusion

Accordingly, this Court holds that Holdings was "engaged in business in this state" from 2003 to 2005 and, as a result, that Holdings was subject to franchise taxes under section 147.010.1 for those years.  Because the AHC did not make the findings necessary to calculate the amount of  those taxes, including the apportionment of Holdings' "outstanding shares and surplus" between and among Missouri and the other states in which Holdings was engaged in business during those years, this matter is remanded to the AHC.

_____
Paul C. Wilson, Judge

All concur.

9