UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, (Plaintiff) Respondent, v. M. E. MORRIS, as Director of Revenue of the State of Missouri, and J. E. TAYLOR, as Attorney General of the State of Missouri, (Defendants) Appellants, Nos. 41093, 41094—222 S. W. (2d) 767.

Division One, July 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, September 12, 1949.

*J. E. Taylor*, Attorney General, and *Will F. Berry, Jr.*, Assistant Attorney General, for appellants.

*Robert J. Keefe, William H. Ferrell* and *Igoe, Carroll, Keefe & Coburn* for respondent.

566

DALTON, C.—Defendants have appealed from decrees enjoining the collection of $47,646.25 of the corporation franchise tax assessed against respondent for the year 1946 and $47,226.25 of such tax assessed against respondent for the year 1947. A construction of Sec. 135 of the General and Business Corporation Act, Laws 1943, pp. 410, 475, Sec. 4997.135 R. S. A. is required.

The facts are not in dispute and the cause was submitted upon the pleadings. Respondent, a domestic corporation, owned the shares of stock of two Illinois corporations which were not engaged in business in the state of Missouri. None of the property or assets of either of said corporations, represented by the shares of stock owned by respondent, was located or employed in the state of Missouri during said years. In computing the Missouri corporation franchise tax due from respondent for the years mentioned, the Missouri Tax Commission considered the market value of such stocks as a part of the franchise tax base for the purpose of determining the amount of tax due from respondent. Respondent refused the payment of that portion of the tax so computed, which was attributable solely to the inclusion of the market value of such shares of stock, but it paid the balance of the tax for each of said years. The decrees appealed from not only restrained appellants from further attempting to collect this remaining portion of the tax for the said years, but further directed appellant Director of Revenue to show upon his tax books that the amount of the corporation franchise tax due from respondent for said years had been paid.

Section 135, supra, reads in part as follows: "For the taxable year of 1943 and thereafter every corporation of this state organized under or subject to this Act or under any other laws of this state shall, in addition to all other fees and taxes now required or paid, pay an annual franchise tax to the State of Missouri equal to one-twentieth of one per cent of the par value of its outstanding shares and surplus . . . If such corporation *employs* a part of its outstanding shares *in business in another state* or country, then such corporation shall pay an annual franchise tax equal to one-twentieth of one per cent of its outstanding shares and surplus *em-*

*ployed* in this state, and *for the purposes of this Act* such corporation *shall be deemed to have employed in this state* that proportion of its entire outstanding shares and surplus that its *property and assets in this state* bears to all its property and assets wherever located. . . . ." (Italics ours).

The word "shares" is defined in Sec. 2(f), Laws 1943, p. 410, Sec. 4997.2(f), as "the units into which the shareholders' rights to participate in the control of the corporation, in its surplus or profits, or in the distribution of its assets, are divided."

Appellants contend the decrees are erroneous because the shares of stock owned by respondent in the two foreign corporations were "property and assets in this state" and, therefore, that the value of such shares were properly included as a part of the tax base of respondent in determining the total amount of its corporation franchise tax for said years. Appellants rely upon the last quoted part of the statute, supra, and say that "the Missouri franchise tax is not one computed upon a base limited to capital assets 'employed' in this state"; and that "the legislative directive . . . clearly discloses that the tax base of a corporation is not to be limited to such property and assets as may be actually used in taxpayers business, but rather *all property and assets in the state* are to be considered." Appellants' theory is that "all of the property and assets in the state are deemed to be employed here"; that the shares of stock in the two foreign corporations are property and assets owned and held in this state; and that the word "property" includes real and personal property, and "personal property" includes "money, goods, chattels, things in action and evidence of debt." Sec. 655 R. S. 1939, Sec. 655, R. S. A.

Appellants further insist that the provision as to what "shall be deemed to have been employed in this state" differentiates the statute from a New York statute basing a franchise tax "upon the amount of capital stock employed within this state." Cases construing the New York statute have held that the mere collection of dividends and interest on the stocks and bonds of a foreign corporation located outside of New York was not the employment of capital in the state of New York, although the stocks and bonds were owned and held there. People ex rel. Chicago Junction Rys. Co. v. Roberts, 154 N. Y. 1, 47 N. E. 974; People ex rel. Edison Electric Light Co. v. Wemple, 148 N. Y. 690, 43 N. E. 176; People ex rel. Edison Electric Light Co. v. Campbell, 138 N. Y. 543, 34 N. E. 370; People ex rel. New York C. R. R. Co. v. Knight, 173 N. Y. 255, 65 N. E. 1102.

Appellants concede that they have found no cases precisely in point on the issue here presented and say that they must rely upon general rules to determine the locus of the "property and assets" of respondent as represented by the shares of stock in the two foreign corporations. Appellants insist that the said shares of stock, as per-

sonal property and as "property and assets" of respondent, must be considered to be located at the domicile of the owner in this state. Appellants argue that "while it is true that intangible personal property may acquire a 'commercial' or 'business' situs away from the domicile of the owners for the purpose of taxation yet . . . that for the purpose of determining the locus of the property, absent a showing of relinquishment of control or actual employment in a foreign jurisdiction, such property must be considered localized at the domicile of the owners."

Respondent, on the other hand, contends that the statute must be strictly construed in favor of the taxpayer and against the taxing authority; that the statute excludes from the corporation's franchise tax base the market value of that part of a corporation's property which represents capital employed in business outside Missouri; that "the value of that part of its capital represented by its investment in the two foreign corporations, whose property, assets and business are wholly outside Missouri, was erroneously included in the tax base"; and that that part of the tax, which is based upon such property and assets employed without the state, was void and uncollectable. Respondent insists that the shares of stock which it owns in the two foreign corporations is only evidence of the employment of its property and assets in business in the foreign state; and that the funds invested in such shares of stock of such foreign corporations are not "employed in business in this state." Sec. 137 Laws 1943, p. 477, Sec. 4997.137 R. S. A.

Technically of course respondent owns the shares of stock in which its capital is invested and not the property and assets represented thereby. The two foreign corporations issuing the stock have legal title to the property and assets in the foreign state, and such foreign corporations, not respondent, are engaged in business in such foreign state. On the other hand, it is admitted that the two Illinois corporations are wholly-owned subsidiary corporations of the respondent. Of course there can be no doubt that corporate shares of stock issued by a foreign corporation and owned and held by a domestic corporation in his state are. "property and assets" of such domestic corporation, but the question here is as to the *location* and employment of such property and assets within the meaning of Sec. 135, supra.

In view of the admitted facts does respondent employ a part of its capital in business in a foreign state or does it employ all of its property and assets in Missouri where it owns the shares of stock of the two foreign corporations? Were the shares of stock in question "property and assets" employed and located in Missouri within the meaning of the statute fixing the tax base to be used in computing the franchise tax liability of respondent? Does Sec. 135, supra, disclose "a clear legislative intent to include in the tax base all

property of the taxpayer corporation of every kind and nature,'' including shares of stock in the foreign corporations, as contended by appellants? If it does, then the value of the shares of stock issued by the foreign corporations, but owned and held by respondent, a domestic corporation, was properly used in measuring the amount of respondent's liability for the franchise tax, even though all of the property and business of the two foreign corporations is all located outside of Missouri.

The tax in question is a franchise tax and such a tax is not a tax upon property, but is an excise tax levied upon the right of the corporation to transact business in the state. Missouri Athletic Ass'n. v. Delk Inv. Corp., 323 Mo. 765, 20 S. W. (2d) 51, 55; State ex rel. Missouri Pac. R. Co. v. Danuser, 319 Mo. 799, 6 S. W. (2d) 907, 911. "The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and the 'manifest purpose of the statute, considered historically,' is properly given consideration." Cummins v. Kansas City Public Service Co., 334 Mo. 612, 66 S. W. (2d) 920, 925. The statute in question here is a taxing statute and it is well settled that such a statute must be strictly construed in favor of the taxpayer and against the taxing authority. State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S. W. (2d) 1, 3. The fact that a particular subject of taxation is within the purview and intendment of the taxing statute must clearly appear. Artophone Corp. v. Coale, 345 Mo. 344, 133 S. W. (2d) 343, 347.

In this case the meaning of the questioned words cannot be determined independent of the particular context in which they are used and the subject matter under discussion. The statute must be construed with reference to the particular facts in the case and every word, phrase and sentence must be given some meaning if that can be done. State ex rel. McKittrick v. Carolene Products Co., 346 Mo. 1049, 144 S. W. (2d) 153, 155.

It will be presumed, in the absence of a declaration to the contrary, that the General Assembly did not mean to depart from the fixed public policy of the state with reference to the levying of corporation franchise taxes, and that it intended to make the extent of the use of the franchise a basis for the computation of the franchise tax. State ex rel. Marquette Hotel Inv. Co. v. State Tax Commission, 282 Mo. 213, 221 S. W. 721, 723.

In construing the Franchise Tax Act of 1917, Laws 1917, p. 237, Sec. 1, which provided for a corporation franchise tax, this court said: "The act before us contemplates a tax upon the right to do business in accordance with the property actually used in the business. Franchise taxes, to be fair, should be measured by the volume of

business. The volume can best be measured by the property used in the business." State ex rel. Marquette Hotel Inv. Co., supra, 221 S. W. 721, 726(6). There is no suggestion that the shares of stock in question were used in respondent's business, or that it was in the business of buying and selling stocks. On the other hand, it is admitted that respondent is "engaged as a public utility corporation in the business of generating, transmitting, distributing and selling electric energy and steam in the state of Missouri," and that respondent owns the shares of stock of the two Illinois corporations.

While respondent's capital was invested in the shares of stock and while the shares of stock were owned and held by respondent a domestic corporation in this state, the capital so invested and evidenced by such shares of stock was not employed in business in this state, but was employed where the property and business of the two foreign corporations was located. The property and assets and earnings, to which the shares of stock entitled respondent to a distributive share, were admittedly not located in this state.

Under similar conditions, the New York courts have held that the corporation owning the stock "employed no part of its capital" in that state. See cases supra. While the courts of this state have not previously considered the exact proposition presented here, our attention has been directed to certain cases bearing upon the issues presented.

In the case of Union Electric Co. v. Coale, 347 Mo. 175, 146 S. W. (2d) 631, plaintiff-appellant sought an abatement of additional income tax assessed against it on the basis of dividends received on stock owned by it in eight foreign corporations. "The dividends 'were paid from funds derived from capital employed and operations carried on in' the respective domicile states of each company from which dividends were received, 'and none of said companies employed or had any capital in the state of Missouri during the year 1936, or prior thereto, or were engaged in any business or carried on any operations in the state of Missouri during or prior to said year.'" (146 S. W. (2d) 631, 632). To be taxable under the then existing income statute it was necessary to show the *source* of the income was "in this state." Accordingly, defendants contended "the shares of stock, evidenced by stock certificates, have a situs in this state, and should be considered the source of the dividend income." This court held: "Plaintiff's stock certificates in the foreign companies are nothing more than evidence of ownership, . . . and neither the stock certificates nor the shares could be the source of the dividend income." (146 S. W. (2d) 631, 635).

The case of Petition of Union Electric Company of Missouri, 349 Mo. 73, 161 S. W. (2d) 968 also involved the matter of abatement of income tax assessments based upon dividends received on stock in foreign corporations. The court quoted appellants' argument as

follows: "The right of the shareholder is evidenced by the stock certificates which he holds and such right is a property right of the shareholder himself. Dividends received by the shareholders arise out of their ownership of shares of stock. Such shares, being personal property, are considered in law as being located at the domicile of the owner. Therefore the source of the dividends is located at the owner's domicile." (161 S. W. (2d) 968, 970). The court ruled the matter of dividends as follows: "The argument of appellants rests upon two propositions, both of which are legal fictions, useful in many cases yet somewhat dangerous if applied indiscriminately and universally. It is true that for most purposes of corporation law a corporation is considered as a legal person separate and distinct from its shareholders. As such the law considers it the owner of its capital assets. Yet when we penetrate beneath the cloak of legal fiction it is apparent that in the economic sense the real owners of the corporation assets are its shareholders. It is also true that for many purposes the situs of the personal property is considered to be at the domicile of its owner. This latter proposition, however, is purely fictitious and is now limited in its application to a few cases, principally those regarding the devolution of estates of decedents and bankrupts. . . . In the field of income taxation in particular it is important to penetrate beyond legal fictions and academic jurisprudence to the economic realities of the cases. It is conceded that the actual expenditure of labor and the actual use of capital which gave rise to the income represented by these dividends took place outside the state of Missouri. We are forced to the conclusion therefore that the source of this income was outside the state and the dividends received by the taxpayer should not be included in its gross income for the purpose of computing its Missouri income tax." (161 S. W. (2d) 968, 970, 971). Also see Wood v. Deuser, 349 Mo. 1187, 164 S. W. (2d) 303, 305.

In State ex rel. North American Co. v. Koerner, 357 Mo. 908, 211 S. W. (2d) 698, this court had under consideration the Uniform Stock Transfer Act, Laws 1943, pp. 495-502, Sec. 5563.1 to 5563.24 R. S. A. The court said that "prior to the enactment of the Transfer Act, it was well settled in Missouri and elsewhere that the situs of shares of stock is in the state which is the domicile of the corporation, regardless of where the stock certificates may be located." In ruling the issue presented in that case, the court said: "It (a stock certificate) is the tangible evidence of title to a unique type of intangible property having a situs at the domicile of the corporation. The legislature by passing the Transfer Act has made a stock certificate more freely transferable without changing the nature of the property right of the stockholder and without changing the situs of the property. This it had the right to do. The stock certificate remains a title document, not the property itself." (211 S. W. (2d) 698, 700, 702).

Also see State ex rel. Koeln v. Lesser, 237 Mo. 310, 141 S. W. 888; Richardson v. Busch, 198 Mo. 174, 95 S. W. 894.

In the opinion in Strong v. Crancer, 335 Mo. 1209, 76 S. W. (2d) 383, 385, in discussing the matter of stockholders' liability to pay for shares issued to them without payment therefor, this court said: "So far as the corporation issuing stock is concerned, the shares of capital stock which it issues are its liabilities and not its assets. Stock certificates with a stated par value, although not a direct indebtedness of the corporation, evidence the fact that the holder has paid a certain amount to the corporation which it is liable to pay back to him proportionately with other shareholders upon dissolution, out of its assets remaining after other creditors have been paid. Of course it also determines his share of earnings. . . . The shares are assets of the stockholders to whom they are issued, and their liability to pay the par value thereof are assets of the corporation." Appellants rely on this opinion. However, the opinion contains no holding that the market value of the shares, or the property and assets evidenced by such certificates of stock, when issued by a foreign corporation and held by a domestic corporation, are located in this state within the meaning of Sec. 135, supra, for the purpose of determining the amount of franchise tax due from such domestic corporation.

Reading and considering the statute as a whole and giving effect to its several provisions, we must hold that respondent does in fact employ a part of its outstanding shares in business in another state; that the amount evidenced by the market value of the shares of stock held in the two Illinois corporations is not "property and assets in this state," nor are such shares of stock "property and assets in this state" within the meaning of those words as used in the statute; that such property and assets were not "employed in this state"; and that the market value of such shares of stock should not have been included in the tax base for computing the amount of respondent's corporation franchise tax for said years.

The judgment of the trial court should be affirmed. It is so ordered. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.