BOATMEN'S BANCSHARES,
INC., Appellant,

v.

DIRECTOR OF REVENUE, State of
Missouri, Respondent.

No. 70008.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1988.

Rehearing Denied Oct. 18, 1988.

Lawrence H. Weltman, Lori W. Jones, David L. Coffman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Boatmen's Bancshares, Inc. (Boatmen's) appeals from an Administrative Hearing Commission decision upholding the Director of Revenue's (Director's) assessment of additional franchise taxes for 1984

and 1985 and his denial of Boatmen's claim for a refund of 1980 franchise taxes paid under protest. As the issues require "construction of the revenue laws," the case falls within this Court's exclusive appellate jurisdiction, Mo. Const. art. V, Sec. 3, and because the decision involves only questions of law, we exercise an independent review of the cause. *Staley v. Missouri Director of Revenue*, 623 S.W.2d 246, 248 (Mo. banc 1981); *Oberjuerge Rubber Co. v. State Tax Commission of Missouri*, 674 S.W.2d 186, 187 (Mo.App.1984). We affirm.

Boatmen's, a Missouri corporation, does business in Missouri as a registered bank holding company. During the years in question (1980, 1984, and 1985), it owned 99 to 100 percent of the stock in a number of subsidiaries, all of which were banks or similar financial institutions, and during those years neither Boatmen nor its subsidiaries did business outside Missouri. On December 31, 1985, 92.89 percent of Boatmen's assets consisted of either investments in or advances to subsidiaries, and the percentages were similar during the years 1980 and 1984. Boatmen's financed acquisition of the subsidiaries by issuing its own stock with a stated par value of $10.00 per share, and by December 31, 1985, 97 percent of its stock had been issued for the purpose of acquiring the subsidiaries and fulfilling Boatmen's requirements as to ownership, supervision, and control of those institutions.

We turn now to the applicable corporation franchise tax statute, Sec. 147.010.1, RSMo 1978 (Supp.1984), which in pertinent part, provides:

> For ... each taxable year beginning on or after January 1, 1980, every corporation organized under or subject to chapter 351, RSMo, or under any other laws of this state shall, in addition to all other fees and taxes now required or paid, pay an annual franchise tax to the state of Missouri equal to *one-twentieth of one percent of the par value of its outstanding shares and surplus.*

(Emphasis added.[1]) The statutory term "surplus" has long been defined as "the excess of assets employed in the business over the par value of outstanding capital stock," *State ex rel. Marquette Hotel Investment Co. v. State Tax Commission*, 282 Mo. 213, 221 S.W. 721, 725 (Mo. banc 1920),[2] and the parties do not question this definition of the term.

The core dispute concerns the role of a parent corporation's investments in and advances to subsidiaries when computing the parent corporation's franchise tax base. It is agreed that such investments and advancements should in some manner be excluded from the tax base, but the parties differ as to the point at which the exclusion should be effectuated. Boatmen's contends that those investments and advancements should be deducted from the sum of the par value of outstanding stock and the surplus, with the resulting figure constituting the tax base.[3] This was the approach Boatmen's employed in computing its franchise tax for the years in question.

The Director, on the other hand, asserts that the investments in and advances to subsidiaries may be excluded from the assets of the corporation for the purpose of computing surplus, but should not, as Boatmen's would have us do, be subtracted from the sum of the par value of outstanding stock and surplus. The distinction is critical, for Boatmen's interpretation would allow the tax base to be less than the par value of the outstanding stock, whereas the Director interprets the

---

1. The statute also provides for assigning a value to no-par stock. The wording of the emphasized portion of the statute remained the same during each year relevant here.

2. In *Marquette*, we noted that this definition differs from the definition normally used in corporate law in that liabilities are not deducted from assets in determining surplus. 221 S.W. at 723.

3. Boatmen's relies on an earlier interpretation by the State Tax Commission, which administered the franchise tax until the Department of Revenue assumed this responsibility in 1975, and on the Director's tax forms for the years 1981 through 1983, which are not in question in this case. These prior administrative interpretations of the statute support Boatmen's position; however, "an interpretation placed upon a statute by those charged with its administration" is not binding on this court, *State ex rel. Danforth v. European Health Spa, Inc.*, 611 S.W.2d 259, 264–65 (Mo.App.1980), and the Director no longer follows those interpretations.

statute, which taxes a percentage of the "par value of outstanding stock and surplus," to the effect that the tax base can never be less than the par value of the outstanding stock. Hence, as in this case, where investments in and advancements to subsidiaries are excluded from assets of the corporation for franchise tax purposes, and the corporation has no assets in excess of the par value of outstanding stock, the director argues the corporation has *no surplus* and the tax base is simply the par value of its outstanding shares. Consistent with his interpretation of the statute, the Director adopted the par value of Boatmen's outstanding stock as the tax base, and assessed the following:

| Year | Tax | Interest | Penalty | Total |
|------|-----|----------|---------|-------|
| 1980 | $ 8,291.50 | $ 270.18 | $1,658.30 | $10,219.98 |
| 1984 | 22,023.22 | 4,074.30 | 1,101.16 | 27,198.68 |
| 1985 | 22,996.00 | 1,494.74 | –0– | 24,490.74 |

Boatmen's paid the 1980 tax and claimed a refund pursuant to Sec. 136.035.3, RSMo 1978, but protested payment of the additional 1984 and 1985 assessments pursuant to Sec. 147.040.2, RSMo 1978 (Supp.1984). Boatmen's subsidiaries also paid franchise taxes during the years in question.

We are persuaded that the Director's interpretation correctly reflects the legislative intent as embodied in previous decisions of this court. First, we agree with the Director's argument that in computing a corporation's surplus, its investments in and advancements to its subsidiaries should be excluded from its assets. *See Household Finance Corporation v. Robertson*, 364 S.W.2d 595, 607 (Mo. banc 1963); *Union Electric Co. v. Morris*, 359 Mo. 564, 222 S.W.2d 767, 772 (1949). Though *Household Finance* and *Union Electric* concerned other facts and different aspects of the franchise tax statute than those at bar, we find the reasoning there persuasive.

*Household Finance* involved a foreign corporation owning stock of subsidiaries doing business in Missouri, and in deciding that case the Court construed what is now the second sentence of Sec. 147.010.1, RSMo 1978 (1984 Supp.). The statute provided that foreign corporations would "be deemed to have employed in this state that portion of its entire outstanding shares and surplus that its *property and assets in this state* bear to all its property and assets wherever located." 364 S.W.2d at 597 (emphasis added). The Court determined that the foreign parent corporation's investments in and advances to its Missouri subsidiaries were not the parent's "property and assets in this state," but were assets of the subsidiaries. *Id.* at 607. In a converse situation, the Court held that the stock of a foreign subsidiary owned by a Missouri parent corporation is not part of the parent corporation's "property and assets in this state." *Union Electric*, 222 S.W.2d at 772.

■ Similarly, we hold that a Missouri corporation's investments in and advances to its Missouri subsidiaries doing business solely in Missouri should be excluded from its assets in computing its surplus for purposes of the franchise tax. Each subsidiary pays its own franchise tax based upon the par value of its outstanding stock and surplus, and is thus taxed on investments in and advances to it by the parent; accordingly, the parent should not be taxed on those items as part of its assets. This mode of determining the tax base is far more favorable to the taxpayer than that in vogue in jurisdictions such as Texas, which provides that "[a] corporation's surplus includes its investment in its subsidiary corporations." *Bullock v. Enserch Corporation*, 583 S.W.2d 950, 951 (Tex.App.1979).

■ We are also persuaded that the Director's interpretation properly applies the concept of surplus as defined by this Court. As noted above, we have defined the term *"surplus"* as used in the franchise tax statute as "the *excess* of assets employed in the business over the par value of outstanding capital stock." *Marquette*, 221 S.W. at 725 (emphasis added). The definition explicitly states that surplus is equivalent to the assets of the corporation in excess of the par value of its outstanding stock; therefore, if the corporation has no assets in excess of the par value of its stock, by definition it has no surplus. As we noted in *Marquette*, the word "surplus" denotes something in *excess*; " 'surplus' *ex vi termini* implies an excess." *Id.* at 722. When, as here, Boatmen's investments and advances to its subsidiaries are excluded

from the computation of its gross assets, the value of its assets from that computation is less than the par value of its outstanding shares and Boatmen has no "surplus," as that term is employed in the franchise statute and as it has been defined in *Marquette*. Because it has no surplus, its tax base is simply the par value of its outstanding shares.

 This result effectuates the legislative intent, for the statute requires that the corporation is to be taxed on the specified percentage of "the par value of its outstanding shares and surplus." Sec. 147.-010.1, RSMo 1978 (Supp.1984). We are convinced it is intended that the tax base of a corporation doing business solely in Missouri should never be less than the par value[4] of the corporation's outstanding shares and that the franchise tax must be paid upon two separate items—*first*, par value of outstanding stock and second, surplus. In *Marquette*, we stated that:

> the fundamental idea in the mind of the Legislature was that a corporation doing business wholly in this state should be taxed under the provisions of this act upon two things: *First*, upon the amount of its outstanding capital stock, *regardless of the value of its assets, whether more or less than the amount of the outstanding capital stock;* and, *second*, upon any surplus property employed in its business in this state.

*Marquette*, 221 S.W. at 722 (emphasis added).[5] The Court there correctly interpreted the legislative intent and that interpretation, employed here by the Director, in essence construes § 147.010.1 in a manner harmonious with the plain language of the statute, which with a single interpretive parenthetical phrase would require that a corporation shall pay a franchise tax upon:

> One twentieth of one percent of the par value of its outstanding shares and [one

twentieth of one percent of its] surplus.

The dissent herein, arguing for Boatmen's position, maintains that the statute should be construed in a quite different manner and that construction, with certain interpretative parenthetical phrases which personify the essence of Boatmen's version, would require that a corporation shall pay a franchise tax upon:

> One twentieth of one percent of [the total of] the par value of its outstanding shares [plus its] and[6] surplus [even though there may be a negative surplus].

This proposition runs contrary to the plain meaning of the statute and in effect would *sub silentio* reverse or discard the definition of terms announced in *Marquette*.

Boatmen's also argues that a corporation which has issued stock in order to acquire subsidiaries is doubly taxed because the par value of this stock is included in its tax base calculation, and the subsidiary too is taxed on the par value of its own stock and surplus. Boatmen's acknowledges that in some circumstances this may give disparate tax treatment between those parent corporations who fund acquisition of subsidiaries through issuance of their own stock, which raises their tax base by increasing the par value of its outstanding shares, and those who borrow to achieve the same end. In the case of the borrowing corporation, there is no increase in the tax base because the amount borrowed is treated by the parent corporation as an investment or advance to the subsidiary and thus is not included in its assets for purposes of the franchise tax base.

 However, the legislature has determined that each corporation is to be taxed on the par value of *its* outstanding shares and surplus, and Boatmen's admits that its own incidence of the taxation results from the mode of financing it chose for the acquisition of its subsidiaries. The franchise

---

**4.** The statute as noted in footnote 1, *supra*, provides for assigning a value to no par stock.

**5.** We note that, contrary to Boatmen's contentions, the Director's tax forms effectuate the intent of the statute whether the corporation has surplus or not. The tax forms provide that the tax base shall be the greater of the par value of outstanding stock or assets of the corporation. If the corporation has no surplus, as in this

case, the tax base will be the par value of outstanding stock. However, if the corporation has surplus (assets in excess of the par value of outstanding stock), the tax base is equal to such excess plus the par value of outstanding stock. The result is thus a tax base which is equivalent to assets.

**6.** Boatmen's in effect deletes the term "and" and substitutes in its place the phrase "plus its."

tax is designed to tax the privilege of doing business in this state, *Marquette*, 221 S.W. at 722, and "is exacted for each corporate existence." *McNamara v. Arkansas–Louisiana Gas Co.*, 441 So.2d 446, 450 (La. App.1983). Boatmen's is a holding company which performs no other activities, and is taxed on the privilege of doing business in this fashion, just as each subsidiary is taxed on the privilege of doing business as a separate corporate entity. Short of some constitutional infirmity, which has neither been suggested nor referenced here, Boatmen's complaint as to this alleged double taxation must be directed to the legislature.

Affirmed.

DONNELLY, ROBERTSON, HIGGINS, JJ., and COVINGTON, Special Judge, concur.

HOUSER, Senior Judge, dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinion of NORWIN D. HOUSER, Senior Judge.

BILLINGS, C.J., and BLACKMAR, J., not sitting.

NORWIN D. HOUSER, Senior Judge, dissenting.

I respectfully dissent from the majority opinion.

Taxpayer and Director dispute the role of the item "investments in and advances to subsidiaries" in calculating the franchise tax base of a parent corporation.

Previous decisions of this Court—*Union Electric Co. v. Morris*, 359 Mo. 564, 222 S.W.2d 767 (1949) and *Household Finance Corporation v. Robertson*, 364 S.W.2d 595 (Mo. banc 1963)—establish the proposition that investments in and advances to subsidiaries are to be excluded in the calculation. *Household Finance Corporation* states that § 147.010 does not contain "any wording whatever whereby it fairly may be said that the Legislature *intended* that either the cash paid by plaintiff to its subsidiaries operating in Missouri in return for the stock delivered to plaintiff at the time of their incorporation, or the money advanced to them by plaintiff ... should be included in the computation of the amount of franchise taxes owed by plaintiff to the State of Missouri." Paraphrasing the language in *Household* on page 607 particularly apropos here: "When (taxpayer) paid its (several) subsidiaries ... for their capital stock and thereafter advanced them money, the purchase price of the capital stock and the money became assets of the subsidiaries and these identical assets were thereafter employed by the subsidiaries in Missouri, not by (taxpayer); and by virtue of the specific provisions of the statute the subsidiaries, not (taxpayer), reported and paid the portion of the franchise tax computed and based thereon.... (T)he statute does not warrant this court, in construing clearly stated language, to declare its purpose to include the imposition of a corporation franchise tax upon (taxpayer), computed on assets now owned and employed in Missouri by (taxpayer's) ... subsidiaries and upon which said subsidiaries pay a corporation tax to this state."

The majority opinion concedes, page 575, that "It is agreed that such investments and advancements should in some manner be excluded from the tax base,...." In Director's brief, page 5, it is admitted that "Both the Director and the taxpayer agree that *some reduction* in the franchise tax base of a corporation is in order where that corporation has made investments in, and advances to, subsidiaries operating in the state of Missouri." (Our emphasis.)

The dispute is on the question whether this item should be subtracted from the combined figure arrived at by adding surplus to the par value of outstanding shares of capital stock, as taxpayer maintains, *or* subtracted from the single figure of surplus, thus leaving the par value of outstanding shares as the minimum base for the computation of the franchise tax regardless of any other consideration, as the Director contends.

This is purely and simply a question of statutory construction, subject to the basic, underlying rule that taxing statutes must be strictly construed in favor of the taxpayer and against the taxing authority, *Union Electric Co. v. Morris*, 359 Mo. 564, 222 S.W.2d 767 (1949), and the rule that the

task and mission of this Court is to ascertain the intention of the law-making body and as far as possible give effect to the intention expressed, *Household Finance Corporation*, supra, 364 S.W.2d l.c. 602 [5].

The plain, ordinary and common sense meaning of the words "the par value of its outstanding shares and surplus" as used in § 147.010.1 mandate a conclusion opposite to that reached by the Director and Commission. A tax equal to ⅟₂₀ of 1% of the par value of the shares AND surplus clearly means a tax on the sum of both of them. In plain English it contemplates a figure arrived at by adding the amount of the surplus, if any, to said par value.

Section 147.010.1 does not employ the term "and/or." The use of the word "and" (a conjunction) ordinarily, usually and in this context connotes the idea of "in addition to" or "plus." It implies the addition of something to something else. The language, in common parlance and as ordinarily understood, calls for a tax equal to the statutory percentage of the total combined amount arrived at by adding together par value of outstanding shares, and surplus (if any), from which combined figure, under the judicial decisions cited, taxpayer's investments in and advances to subsidiaries are to be subtracted.

The State Tax Commission, which administered the franchise tax prior to 1975, so construed the statute, holding that stock in and advances to subsidiaries are to be excluded from the total franchise base. This position was clearly stated by the tax commission in *Mo. Pac. Corp. v. Goldberg*, Appeal No. 1977–5, December 31, 1979:

The Commission further finds that in computing its franchise tax base a corporation should be permitted to deduct its investment in its subsidiaries from the par value of the outstanding shares and surplus. On this point, the statutory language of Section 147.010(2), RSMo 1969, is quite clear. The tax base consists of two factors, outstanding shares and surplus, but the base itself is a total of those factors. To contend, as does Respondent, that the state franchise tax is to be assessed individually against first, the par value of the outstanding shares and,

then, the corporate surplus is unfounded. The statute in question imposes a tax on the par value of a taxpayer's outstanding shares *and* surplus employed in business in this state. It must be concluded that the legislature intended the tax base to be the total of the taxpayer's outstanding shares and surplus, and not outstanding shares *or* surplus. The statute utilizes the conjunction "and" whenever it uses the words "outstanding shares" and "surplus". The use of this conjunction suggests that it was utilized to express the idea that the latter is to be added to or taken along with the first. For these reasons, the Commission finds for Complainant on this issue.

In support of his thesis the Director cites a statement in *State ex rel. Marquette Hotel Investment Co. v. State Tax Commission*, 282 Mo. 213, 221 S.W.2d 721, 722 (Mo. banc 1920), that the legislative intent was to tax a corporation upon two things: first, the amount of its outstanding capital stock, and second, upon any surplus property employed in its business. The Director maintains that this statement evidences a legislative intent that the corporation franchise tax be based at a minimum on the value of the corporation's capital stock. The Director's reliance on *Marquette* is misplaced. *Marquette* involved a parent corporation without subsidiaries, not as the case before us, which involves a parent corporation with twenty-three (23) subsidiaries. *Marquette* decided that "surplus" as used in the statute means the excess of gross assets over outstanding capital stock without deducting debts or liabilities. It did not involve, and no pronouncement was made upon, the issue now before this Court. It did not hold that § 147.010.1 establishes par value of outstanding stock as the lower limit or floor of the corporate franchise tax base.

Section 147.010.1 prescribes one single tax base; it does not prescribe alternate tax bases. The *Union Electric Company* opinion, supra, 222 S.W.2d pp. 768, 769 and 772, refers to the franchise tax base (singular), not tax bases (plural). In computing the franchise tax base the Director, as shown by the officially prescribed franchise

tax return forms, requires a corporate taxpayer to compute two separate franchise tax bases. On line 1 the value of the capital stock is to be reported. On line 2 (c) total assets less investments, etc. in subsidiaries are to be reported. The statutory percentage is then applied to the greater of these alternative figures, as a result of which the par value of the capital stock inevitably becomes the floor of the tax base. There is no statutory warrant for this bifurcated, alternative method of computing the franchise tax base. The form of the return represents an improper, unauthorized exercise of administrative discretion without any basis in the language of § 147.010.1. Instead of providing for the computation of the tax on the basis of a combined figure derived by adding surplus, if any, to par value of outstanding stock, less investments in and advances to subsidiaries, the Director, ignoring the case law requirement that investments in and advances to subsidiaries must be excluded in calculating the franchise tax base, gratuitously and without any legal basis engrafts upon the statute an unauthorized, self-invented addendum in the form of a "however," viz: "however, regardless of investments in and advances to subsidiaries, and regardless of surplus, vel non, the franchise tax shall never be calculated on any amount less than the par value of the corporation's outstanding shares." Acceptance of this amendment of § 147.010.1 not only involves a strict construction of the statute in favor of the taxing authority and against the taxpayer, contrary to the time-honored rule of construction, but also constitutes judicial legislation.

Upon assuming the administration of the franchise tax in 1975 the Director of Revenue at first permitted taxpayers to deduct investments in and advances to subsidiaries only from the total assets of the corporation, but not from capital stock. Then in 1981, 1982 and 1983 the Director changed the franchise tax forms, and permitted deductions of investments in and advances to subsidiaries from the total tax base of outstanding stock and surplus (a construction consistent with taxpayer's position). Finally, in 1984, the Director changed polarity and returned to the position taken prior to 1981. While the Director may not be held to the construction formerly placed on the statute on the basis of estoppel, *Bartlett & Co. Grain v. Director of Revenue*, 649 S.W.2d 220, 224 (Mo.1983), his interpretation during the years 1981, 1982 and 1983, and the State Tax Commission's construction the same way during the years prior to 1975, support taxpayer's position and interpretation. The Director's current construction is not entitled to much weight because it was not consistent ... construction one way for five years; the opposite way for three years, then a return to his original view. Compare the effect of inconsistent constructions by parties to a contract. *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 864 [24] (Mo. banc 1960).

Finally, the Director's current construction of § 147.010.1 will inevitably result in double taxation, which is not favored and may not be presumed to have been intended by the legislature. *General American Life Insurance Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458 (1952); *Wood v. Deuser*, 349 Mo. 1187, 164 S.W.2d 303 (1942). As indicated, taxpayer is not an operating company; it is a bank holding company. Almost all of its assets consist of stock in a number of subsidiary corporations, all of which do banking business in Missouri, and each of which files a corporation franchise tax return upon which it pays a franchise tax in full based upon its total assets. Taxpayer's subsidiaries conduct all of the banking operations and pay a franchise tax for that privilege. Under the Commission's ruling the State of Missouri will be taxing the same outstanding capital stock twice: once at the subsidiary level, and again through the parent corporation.

The decision of the Administrative Hearing Commission dated October 20, 1987 should be reversed and the cause remanded to the Commission with directions to enter judgment for Boatmen's Bancshares, Inc. on its complaint before the Commission with respect to the Director's assessments for the years 1984 and 1985, and to decide the exhaustion of remedies issue with re-

spect to Boatmen's Bancshares, Inc.'s claim for refund of its 1980 franchise tax.

WELLIVER, Judge, dissenting.

I respectfully dissent and concur in the dissenting opinion of Senior Judge Houser. The clarity of thought, the understanding of Missouri business and the scholarly analysis of our law constitutes one of the best exposés of the majority's insatiable appetite for assessing taxes by judicial interpretation.[1]

1. The dissenting opinion of Houser, Sr.J., also stands as a tribute to the Missouri Non-Partisan Court Plan utilization of its senior judges and is the strongest argument for Missouri taking the second step and enacting the federal court system for utilizing the talents of senior judges.