TSI HOLDING COMPANY, Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

Tubular Steel Industries,
Inc., Appellant,

v.

Director of Revenue, Respondent.

T–3, Inc., Appellant,

v.

Director of Revenue, Respondent.

Nos. SC 85179-SC 85181.

Supreme Court of Missouri,
En Banc.

Nov. 4, 2003.

Juan D. Keller, B. Derek Rose, St. Louis, Edward F. Downey, Jefferson City, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

## INTRODUCTION

Missouri's franchise tax law imposes a tax on a corporation's property and assets that are "employed" by the corporation in this state. The question presented in these appeals is whether the assets of these three corporations—invested in stocks, bonds, mutual funds and subsidiaries—are "employed" in Missouri within the meaning of the law.

The taxpayers in these three cases, TSI Holding Company, Tubular Steel Industries, Inc., and T–3, Inc., seek review of assessments by the director of revenue of additional Missouri franchise taxes for the years 1996–1998. In 1999, the director assessed additional taxes for the years 1996–1998 after rejecting the alternate asset allocation formula used by these taxpayers on their Missouri franchise tax returns since 1995 and on amended returns for the years 1993 and 1994. The alternate formula used by these taxpayers differed from the asset allocation formula on the Missouri franchise tax return form because these taxpayers claimed that the asset allocation formula on the Missouri franchise tax return form did not fairly allocate their assets. These taxpayers also claimed that the secretary of state had approved their use of the alternate formula for the years 1993–1995 and that the approval continued to be valid for subsequent years.

The Administrative Hearing Commission held that, for purposes of apportionment of Missouri franchise taxes, assets belonging to a Missouri corporation not conducting business in any other state—which may be invested in entities that are not located in Missouri, have no assets or property in Missouri and do no business in Missouri—may be deemed to be "employed" by that corporation in Missouri. The commission held TSI and Tubular liable for additional franchise taxes as assessed by the director for the years 1996–1998, plus interest. The commission held T–3 liable for additional taxes for the years 1996 and 1998, plus interest.

This Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution because resolution of these cases requires construction of a revenue law of the state of Missouri. The decisions of the commission are affirmed.

## FACTS AND PROCEDURAL HISTORY

### The Parties

TSI, a Missouri corporation, is engaged in business as an investment holding company. TSI has always had its headquarters in Missouri and has no offices in any other state. All of TSI's assets are cash and investments—in municipal bonds, mutual funds, common stock and subsidiaries. Some of the entities in which TSI invests are located in Missouri, have assets in Missouri, or do business in Missouri and some do not. TSI has never filed fran-

chise tax returns in any state other than Missouri.

Tubular, a Missouri corporation, is generally engaged in business as an investment holding company. Tubular has always had its headquarters in Missouri and has no offices in any other state. TSI owns 100 percent of Tubular. Tubular owns 100 percent of Tubular Steel, Inc., a steel distributor. All of Tubular's assets are cash and investments—in municipal bonds, mutual funds, common stock and subsidiaries. Some of the entities in which Tubular invests are located in Missouri, have assets in Missouri, or do business in Missouri and some do not. Tubular has never filed franchise tax returns in any state other than Missouri.

T–3, a Missouri corporation, has always had its headquarters in Missouri and has no offices in any other state. During 1996–1997, T–3 was engaged in business as a jewelry distributor. Since 1998, T–3 has been engaged in business as an investment holding company. TSI owns 90% of T–3. T–3's assets are cash and investments—in municipal bonds, mutual funds, common stock and subsidiaries. Some of the entities in which T–3 invests are located in Missouri, have assets in Missouri, or do business in Missouri and some do not. T–3 has never filed franchise tax returns in any state other than Missouri.

## Administration of the Missouri Franchise Tax

Before 2000, the secretary of state administered the Missouri franchise tax. As of January 1, 2000, the director of revenue has been administering the tax. Even before the director took over the administration of the tax, the director conducted audits of the Missouri franchise tax for the periods after 1987 in which the secretary administered the franchise tax.

When the secretary administered the Missouri franchise tax, the secretary generally accepted franchise tax returns that utilized alternate methods of apportionment, if the returns were supported by a written approval letter. Approval of the alternate method generally remained in effect until such alternate method was reviewed by a staff attorney and revoked by the secretary at that attorney's suggestion. Since 2000, when the director took over administration of the franchise tax, the director has disregarded any agreements for a prior tax year in determining whether an alternate method of apportionment is acceptable for subsequent tax years.

## These Taxpayers' Franchise Tax Returns

On all of their original Missouri franchise tax returns through 1994, TSI and Tubular reported all of their allocable assets as employed entirely in Missouri. In December 1994, TSI and Tubular filed amended franchise tax returns for 1993 and 1994, because their accountants determined that the asset allocation formula on the Missouri franchise tax return form did not fairly allocate TSI's and Tubular's assets. The Missouri franchise tax return forms for 1993–1998 instructed the taxpayer to divide Missouri accounts receivable, Missouri inventory, and Missouri land and fixed assets by the total accounts receivable, inventory, and land and fixed assets in order to arrive at an apportionment percentage, but were silent for taxpayers—such as the three corporation taxpayers here—that have no such assets.

Accountants for these three taxpayers, which are related corporations, devised an alternate allocation formula by which these taxpayers sought to apportion their invested capital assets for computation of their franchise tax base by direct allocation to the places where the assets their capital investments represented were used in the business of the entity in which they were

invested. On the amended returns TSI and Tubular apportioned their capital investment assets by including in the numerator all assets in which they invested that were located in Missouri, had assets in Missouri, or did business in Missouri and their cash and intercompany receivables and by including in the denominator all assets. TSI and Tubular did not include their investments in subsidiaries in calculating the apportionment percentages on the amended returns.

The secretary initially rejected TSI's and Tubular's amended returns, but in January 1996, after an extended period of discussion, the secretary authorized refunds to TSI and Tubular in the amounts reflected on the amended returns for 1993 and 1994.[1] In April 1995, TSI and Tubular filed their 1995 franchise tax returns using the alternate allocation formula they used in the amended 1993 and 1994 returns. The secretary accepted those returns as filed. TSI and Tubular continued to use the alternate formula for their returns filed for the 1996–2000 tax years, and T–3 used the alternate formula for its returns filed for the 1998–2000 tax years.

### The Audits

In 1999 an auditor for the director and the secretary examined these three corporations' franchise tax returns for the 1996–1998 tax years. The auditor rejected the way these taxpayers had apportioned their assets. The auditor also concluded that these taxpayers did not have the secretary's approval to use the alternate method of apportionment for these years. On the basis of the audits, the director revised the assessments of franchise taxes for the 1996–1998 tax years according to the formula on the Missouri franchise tax return form and notified these three taxpayers that they owed additional taxes plus interest for those years. These taxpayers filed complaints with the Administrative Hearing Commission. The commission affirmed the director's assessments. These taxpayers seek review of the commission's decisions.[2]

### DISCUSSION[3]

### The Missouri Franchise Tax

 The issue in these cases involves construction of section 147.010.1, imposing the franchise tax on domestic corporations, but providing an apportionment when a corporation "employs a part of its outstanding shares in business in another state or country."[4] The phrase "employs

---

1. There is no record of any written approval having been issued with regard to their use of the alternate method of apportionment.

2. The director revised the assessments for T–3 for the 1996 tax year as well as the 1998 tax year. However, on appeal to the commission and on review by this Court, T–3 raises arguments only as to the 1998 tax year. The commission upheld the director's assessment for T–3 for the 1996 tax year without comment.

3. In reviewing the decision of the Administrative Hearing Commission, this Court's interpretation of revenue laws is de novo. *Southwestern Bell Yellow Pages v. Director of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002). "The Court will uphold the AHC's decision if 'authorized by law and supported by competent and substantial evidence upon the whole record.'" *Id.* "In a taxing statute there must be specific authority, or authority necessarily implied, for the imposition of a tax." *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 448 (Mo.banc 1964).

4. Section 147.010.1 provides:

For ... each taxable year beginning on or after January 1, 1980, but before January 1, 2000, every corporation organized pursuant to or subject to chapter 351, RSMo., or pursuant to any other law of this state shall, in addition to all other fees and taxes now required or paid, pay an annual franchise tax to

a part of its outstanding shares in business in another state or country" is not clearly defined in the statute or in case law. These taxpayers dispute the director's definition of that phrase as applied to their investments. The director's definition focuses on employment of the value of the invested assets by the taxpayer in the taxpayer's business. The definition that these three corporations propose focuses on employment of the invested assets by the entities the taxpayer has invested in.

■ The Missouri franchise tax is a tax on the privilege of doing business in Missouri, not a property or income tax. *Missouri Athletic Association v. Delk, Inv. Corp.*, 323 Mo. 765, 20 S.W.2d 51, 55 (1929). Section 147.010.1 permits a Missouri corporation to apportion its franchise tax base if it *"employs"* a part of its outstanding shares in business in another state or country. The amount of franchise tax owed by a company that does business in Missouri and in other states is computed by determining the extent of the company's use of the franchise in Missouri, utilizing a formula that establishes the proportion that the company's property and assets *employed* in Missouri bear to the company's total property and assets wherever *located*. Thus, the issue here is whether any of these three taxpayers' investments are assets *employed* in other states, not, as the taxpayers contend, "whether the Missouri franchise tax is imposed on a taxpayer's assets that are not *located* in Missouri."

### These Taxpayers' Investments in Stocks, Bonds, Mutual Funds and Subsidiaries Are Not Assets Employed in Another State or Country

■ Two precedents, *Union Electric v. Morris*, 359 Mo. 564, 222 S.W.2d 767 (1949), and *Household Finance Corporation v. Robertson*, 364 S.W.2d 595 (Mo. banc 1963), give guidance to construing the statute. In *Union Electric* the taxpayer was a Missouri corporation that owned 100 percent of the shares of stock of two Illinois corporations that did not engage in business in Missouri. The state tax commission considered the market value of the stocks as part of Union Electric's franchise tax base. Under a previous version of the statute that is now section 147.010.1, this Court held that Union Electric, by owning the shares of the Illinois corporations, employed a part of its own outstanding shares in business in another state. The Court found that the amount of the market value of the shares of stock Union Electric held in the two Illinois corporations was neither property and assets located in Missouri, nor was it employed by Union Electric in its business in Missouri. *Union Electric*, 222 S.W.2d at 772.

The Court in *Union Electric*, however, recognized that this might not be the appropriate holding in every case of foreign investment. "There is no suggestion that the shares of stock in question were used in respondent's business, or that it was in

---

the state of Missouri equal to one-twentieth of one percent of the par value of its outstanding shares and surplus if its outstanding shares and surplus exceed two hundred thousand dollars, ... *If such corporation employs a part of its outstanding shares in business in another state or country*, then such corporation shall pay an annual franchise tax equal to one-twentieth of one percent of its outstanding shares and surplus *employed* in this state if its outstanding shares and surplus *employed*

in this state [exceeds] two hundred thousand dollars, and for the purposes of sections 147.010 to 147.120, such corporation shall be deemed to have *employed* in this state that proportion of its entire outstanding shares and surplus that its property and assets *employed* in this state bears to all its property and assets wherever *located* ... (Emphasis added)

All references are to RSMo 2000 unless indicated otherwise.

the business of buying or selling stocks." *Id* at 770. In the other case, *Household Finance,* this Court further explained its holding in *Union Electric,* stating, "in order to be included in computation of the Missouri franchise tax the property must have been *employed* in Union Electric's business in Missouri." *Household Finance,* 364 S.W.2d at 602.

The present taxpayers' cases are distinguishable from *Union Electric,* where the taxpayer corporation owned 100 percent of the stock of the Illinois subsidiaries and, consequently, had such a degree of control over those subsidiaries that it amounted to doing business in Illinois. The inter-relationship between the out-of-state and in-state activities is a critical factor. Nothing in the record in these cases suggests that TSI, Tubular or T–3 operate, or exercise any amount of control over, the businesses of the out-of-state entities in which they invest.

The record shows that these three taxpayers do not have offices in any other state, nor do they file franchise tax returns in any other state. These taxpayers argue that to the extent the foreign entities in which they invest have offices in other states and file franchise tax returns in other states, these taxpayers should be considered as maintaining "de facto" offices and filing "de facto" franchise tax returns through such entities in those states. Their argument lacks merit.

These three taxpayers are engaged in the business of making investments. They conduct this business in Missouri. Their investments are the very essence of their businesses and form a part of the capital that is used and employed in Missouri in their businesses. These taxpayers do not conduct business in any other state and, consequently, do not employ any portion of their outstanding shares in business in other states. Under section 147.010.1, these taxpayers are not entitled to apportion assets for Missouri franchise tax purposes.

## The Investments of These Taxpayers Are Assets Employed in Missouri

■ The situs of the physical assets represented by shares of stock do not have to be in Missouri in order for the value of those shares to be included in the computation of the Missouri franchise tax, if that value is employed in the taxpayer's business in Missouri. *Household Finance Corp.,* 364 S.W.2d at 602.

In *Household Finance,* the taxpayer was a Delaware corporation with its principal place of business in Chicago. Household was engaged in the business of lending money and had branch offices in Missouri. The state tax commission increased Household's franchise tax base by the amount of the corporation's cash multiplied by the proportion of its loans receivable and tangible assets that were located in Missouri. The tax commission also increased Household's franchise tax base by the corporation's investment in the capital stock of its Missouri subsidiaries and by the amount of advances to its Missouri subsidiaries in the form of interest-bearing loans.

To determine whether the tax commission erred in increasing Household's Missouri franchise tax base, the Court construed a provision of section 147.010 regarding foreign corporations that was in effect at that time. The apportionment for a foreign corporation was similar to the apportionment provision in the current statute for domestic corporations. For foreign corporations, the value of the company's outstanding shares and surplus "employed" in this state was the proportion that its Missouri property and assets bore to the company's over-

all property and assets.[5]

The Court held that the purchase price of the capital stock of Household's Missouri subsidiaries and the money advanced to the Missouri subsidiaries became assets owned and employed by the subsidiaries in Missouri and were not assets of Household employed in Missouri. The Court also held, however, that the assessment as to the corporation's cash was valid. To hold otherwise, the Court said, would enable corporations to avoid the franchise tax by the "simple expedient of keeping such cash in another state and drawing thereon as their needs required." *Id.* at 602–03. The Court held that cash "employed ... in business in this state, irrespective of its location, shall be included in computing the amount of the tax annually accruing under section 147.010." *Id.* at 602–03. The present version of the statute uses the word *employ* in the same manner as the Court's construction of the statutory language in *Household Finance.*

Because Household Finance was a foreign corporation and the taxpayers in the current appeals are domestic corporations, the facts of these appeals are distinguishable from the facts in *Household Finance.* Household Finance, a foreign corporation with offices in Missouri, actually conducted its business in Missouri. The assets the Court found were employed in Missouri were used in the taxpayer's business in Missouri. In this case, TSI, Tubular and T–3 do not have branch offices or conduct any business in the states where the entities in which they invest are located, nor

do they have tangible assets in those states.

Investment in mutual funds and municipal bonds is very different from 100 percent stock ownership and operation of the business of a subsidiary. Even where TSI, Tubular and T–3 invested in the common stock of foreign corporations, there is no evidence that those companies were subsidiaries or companies in which these taxpayers had a controlling interest or that these taxpayers conducted any business through those companies. These taxpayers do not operate the types of businesses or municipalities in which they invest. All of these taxpayers' intangible assets bear a direct relationship to their businesses in Missouri.

These taxpayers argue that when they invest in mutual funds and municipal bonds of other states, the invested capital is employed by those entities in business in the states where those entities are located, and, therefore, such investments are not property and assets employed in this state for purposes of the apportionment fraction. There is *no factual basis in the record* with regard to these taxpayer's investments in partnerships and S corporations and in "long-term investments", but undoubtedly, these taxpayers would make the same argument with regard to those investments.

Section 621.050.2 provides in relevant part, "In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer ..." [6] These taxpayers have pre-

---

**5.** The statute being construed in *Household Finance* provided: Every foreign corporation engaged in business in this state ... shall pay an annual franchise tax to the state of Missouri equal to one twentieth of one percent of the par value of its outstanding shares and surplus employed in business in this state ... and for the purposes in this chapter such corporation shall be deemed to have em-

ployed in this state that portion of its entire outstanding shares and surplus that its property and assets in this state bear to all its property and assets wherever located.

*Household Finance,* 364 S.W.2d at 597.

**6.** Taxpayers do not argue that they fall within certain exceptions to this provision found in section 621.050.2 and in section 136.300.1.

sented no factual basis to conclude that any of the investments in these cases involve property and assets employed by these taxpayers in the conduct of their business in other states.

These three taxpayers made all their investments from their Missouri locations and received a return on those investments in Missouri. These taxpayers are in the business of investing and conduct that business entirely within Missouri. The situs of the securities is not controlling. The rationale for excluding cash from the computation of the apportionment ratio in *Household Finance* was that its location did not accurately reflect the taxpayer's business and could easily be manipulated. *Household Finance* 364 S.W.2d at 603. It would make no sense to grant domestic investment holding corporations the privilege of operating their businesses in Missouri, but then allow them to avoid their franchise tax obligations simply by limiting investments to out-of-state stocks and bonds.

**Secretary of State's Approval of Taxpayers' Alternate Allocation Formula**

 The secretary of state may approve the use of an alternate method of apportionment under a regulation promulgated in 1996. *See* 15 CSR 30–150.170(E), effective March 20, 1996. These taxpayers assert that the secretary's approval of franchise tax refunds for TSI and Tubular for the 1993 and 1994 tax years, in response to their amended returns for those years, and the secretary's silent acceptance of TSI's and Tubular's original returns for the 1995 tax year constitute approval of the alternate formula. They also contend that this tacit approval applied to subsequent years until it was expressly revoked.

Even assuming that the secretary of state gave approval to these taxpayers'

alternate method of apportionment for the 1993–1995 tax years, a decision to settle a dispute with a taxpayer for one year can not be read as an approval of an alternate method for subsequent years. Moreover, the secretary is not prohibited from withholding that approval for later tax years. Finally, these taxpayers had no written approval entitling them to employ an alternate method of apportionment for any of the tax years in which these taxpayers used their alternate method.

## CONCLUSION

For the purposes of section 147.010.1, assets that these three taxpayers invested in foreign entities are deemed to have been employed in Missouri by the taxpayers, notwithstanding the situs of the physical assets of those entities. These taxpayers, TSI, Tubular, and T–3, are engaged in the business of making investments from offices in Missouri. They do not have offices in any other state, they do not do business in any other state, and they do not file franchise tax returns in any other state. The assets invested by these taxpayer's in foreign entities are property and assets employed by these taxpayers in the conduct of their businesses in Missouri. TSI, Tubular and T–3 were not, therefore, entitled to apportion income for the tax years at issue and are liable for the franchise tax and interest as the director assessed. The decisions of the Administrative Hearing Commission are affirmed.

WHITE, C.J., BENTON, LAURA DENVIR STITH, PRICE, and LIMBAUGH, JJ., and RAHMEYER, Sp. J., concur.

TEITELMAN, J., not participating.

Moreover, there is evidence in the record to

suggest that these exceptions do not apply.