MISSOURI STATE EMPLOYEES'
RETIREMENT SYSTEM,
Respondent,

v.

JACKSON COUNTY,
Missouri, Appellant.

MISSOURI STATE EMPLOYEES'
RETIREMENT SYSTEM,
Respondent,

v.

JACKSON COUNTY,
Missouri, Appellant.

Nos. 68801, 68943.

Supreme Court of Missouri,
En Banc.

Oct. 13, 1987.

Gary Owens, Legal Counsel, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

Case No. 68801 is an appeal in a statutory action of mandamus under Section 104.345.2(4)(f)(ii), RSMo 1986, brought by the Missouri State Employees' Retirement System (MOSERS) against Jackson County. Certain court clerks who had previously been county employees became state employees on July 1, 1981 by reason of Section 483.245, RSMo 1986, adopted June 15, 1978, 1978 Mo.Laws 904.

On becoming state employees the clerks could elect to participate in the MOSERS retirement program, with credited service dating from their initial employment by the county. MOSERS sought, pursuant to Section 104.345, RSMo 1986, adopted May 12, 1981, 1981 Mo.Laws 281, to compel the county to contribute sufficient funds so that MOSERS would not suffer loss by reason of past service credits extended to the transferred employees. Its actuary testified that the amount necessary to ac-

complish this result was $444,981, as of July 1, 1981.

The county objected to this payment. It is willing to pay only $146,806.26, which is the value of the transferred employees' interest in the more modest county pension fund as of the date of transfer, as determined by its actuary.[1] The trial court entered judgment for the state in the amount of $713,837.32, this being the entire amount claimed by MOSERS plus interest.

The county sought to enjoin the state from withholding from the county funds in excess of the amount due from the county to MOSERS. The trial court denied relief, holding that when the judgment in the mandamus action was satisfied the court would order the state treasurer to cease withholding further sums and to pay over any excess funds. Case No. 68943 is an appeal from that judgment, which is consolidated with No. 68801. We affirm both judgments.

The county argues (1) that the requirement of Section 104.345 that it fund prior service credits violates Mo. Const. Art. III, Sec. 39(3), because it amounts to a retroactive increase in compensation for the affected employees; (2) that 104.345 violates the Hancock Amendment, Mo. Const. Art. X, Sec. 21, in that it requires an increase in the level of an activity or service required of the county, without a corresponding state appropriation; and (3) that Section 104.345 provides no sufficient standards for guidance and cloaks MOSERS with arbitrary discretion and authority, in violation of Art. II, Sec. 1, Mo. Const. It also argues that mandamus is not a proper remedy because Jackson County is not a proper respondent and MOSERS has not shown the existence of a ministerial duty.

The parties have caused us unnecessary labor by their failure to quote the governing statutes anywhere in their briefs. It is helpful if we do not have to juggle too many thick volumes at the same time. Per-

---

1. This payment is required by Section 104.345.-2(4)(c), which provides the authority for taking the money out of the county pension fund. Sums so paid would be a credit against pay-

ments required by 104.345.2(4)(a), because they would reduce the amounts required to make MOSERS whole.

tinent parts of Section 483.245, RSMo 1986, read as follows:

1. The provisions of this section shall become effective on July 1, 1981.

\* \* \* \* \* \*

6. The salaries of deputy circuit clerks and division clerks shall be established by the circuit clerk in the case of deputy circuit clerks, or the judge appointing the division clerk in the case of division clerks, within salary ranges and classifications which may from time to time be established by administrative rule of the supreme court within the limit of funds appropriated for this purpose. The salaries of deputy circuit clerks and division clerks shall be paid by the state, and they shall be state employees.

Section 104.345, RSMo 1986, reads in pertinent part as follows:

(4)(a) In lieu of the city of St. Louis or a county continuing to be obligated to pay the salary of any such deputy circuit clerk or division clerk who makes application for creditable prior service, the city of St. Louis or the particular county shall contribute to the Missouri state employees' retirement system an amount actuarially determined to be sufficient to fund the creditable prior service of those deputy circuit clerks and division clerks who become state employees on July 1, 1981, and who elect to receive creditable prior service in the manner provided in paragraph (b) of subdivision (1) of this subsection 2.

(b) The amount to be contributed to the Missouri state employees' retirement system by the city or county shall be determined by an actuary employed or retained by the Missouri state employees' retirement system;

(c) If a person elects to receive creditable prior service pursuant to the provisions of subdivision (1) of this subsection 2 and if that person was on June 30, 1981, a member of the local government employees' retirement system under sections 70.600 to 70.755, RSMo, the amount of "accumulated contributions" to which that person would otherwise be entitled to be paid under the provisions of section 70.690, RSMo, shall be paid over to the Missouri state employees' retirement system without action by the particular employee. Notwithstanding any other provisions of law, such employee shall not be entitled to a refund of any such "accumulated contributions" from either the local government employees' retirement system or the Missouri state employees' retirement system;

\* \* \* \* \* \*

■ Contrary to the county's argument, we believe that the requirements of the statute are clear. Counties are obliged to contribute sufficient sums to make MOS-ERS whole, on account of past service credits for county employees who are admitted to participation in MOSERS on becoming state employees. The amounts due depend on actuarial computation, which takes account of life expectancies and interest factors. The actuary is the person who is equipped to compute the sums required by the statute subject to review by the court. The statute is not vague as to what is required and it does not delegate any authority to MOSERS which is not supported by actuarial computation. It makes no difference that the actuarial computations are not exact, or that certain assumptions are made about future salaries. The requirement is simply that the best computation available be furnished. The courts are open to a claim that the actuarial computation is unsound.

The county, however, does not challenge the soundness of MOSERS' actuarial computations. Its own actuary, a member of the same firm, made computations on the assumption that the county was required to contribute only such sums as represented the transferred employees' interest in the county pension fund. The trial court properly rejected this assumption. The computations of MOSERS actuary are sufficient to support the judgment.

The constitutional points remain. We do not lightly hold legislative action unconstitutional. There is a presumption of constitutionality. *Associated Industries of Missouri v. State Tax Commission,* 722 S.W.2d 916 (Mo. banc 1987), appeal dismissed for want of a substantial federal

question, *sub nom Albertus v. State Tax Commission,* —— U.S. ——, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987). Unconstitutionality must clearly appear. We must also construe the statute so as to be consistent with the Constitution, if the language reasonably admits this construction.

Art. III, Sec. 39(3) of the Missouri Constitution provides that the General Assembly lacks the power:

\*  \*  \*  \*  \*  \*

(3) To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part;

\*  \*  \*  \*  \*  \*

The county argues that its former employees were fully paid for the work they did, and that any attempt to require the county to fund their prior service credits gives them improper additional compensation. It relies primarily on *Police Retirement Systems v. Kansas City, Missouri,* 529 S.W.2d 388 (Mo. banc 1975), which sought to authorize cost of living increases in the pension benefits for police officers who had retired corresponding to those provided for officers currently on the force.

■ The analogy sought to be drawn is superficial. The retired officers were no longer working for the city. The court said, 529 S.W.2d 391:

When the officers in question retired from the police department, their pensions were determined and fixed in accordance with the then established applicable formulas.

The transferred clerks, by contrast, continued in public employment. Their pension benefits relate to the future not to the past. Provision of adequate retirement benefits for current government employees is a proper legislative purpose. The legislature might feel that it would be easier for the state to retain trained and competent employees if it afforded superior pension benefits, with credit for past service in like positions. The increased entitlement is a part of their compensation for current and continuing services.[2]

Nor do we find any violation of Art. X, Sec. 21, of the Missouri Constitution, reading as follows:

The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

■ The county argues that the requirement that it fund past service credits is an increased level of activity or service, not previously required. It overlooks the patent circumstance that the net effect of the changes wrought by Sec. 483.245 and 104.345 is to relieve it of the burden of compensating the clerks after July 1, 1981. It would retain the benefit of the transfer, while rejecting the burden. The net fiscal effect of the changes is overwhelmingly in favor of the county.

The county would reject this quid pro quo claim on the basis that when 483.245 was adopted there was no legislative requirement of a payment to MOSERS to fund past service credits. At the time 104.345 was adopted, however, the transfer from state to county employment as projected by 483.245 had not taken effect, and could have been repealed. A bill for this purpose had actually been introduced (S.B. 456 (1981) ("do pass" recommendation by appropriations committee, April 16, 1981)). It is appropriate to treat the two statutes together in determining whether there has been a violation of Art. X, Sec. 21. Section 104.345 states explicitly that the requirement of a one-time payment to

---

**2.** *Hawkins v. Missouri State Employee's Retirement System,* 487 S.W.2d 580 (Mo.App.1972) assumes that the legislature could pass an appropriation to fund prior service credits for employees who had been assumed to be ineligible to participate in MOSERS, but were found to be eligible.

fund the past service benefits of transferred employees is a provision in lieu of the continuing duty to pay the salaries of the clerks, which the state assumes.

We conclude that the two bills represented an attempted solution of a discrete problem which was within the legislature's authority. There is no impermissible increase in the level of activity or service. *Boone County Court v. State*, 631 S.W.2d 321 (Mo. banc 1982), involving state mandated increase in the compensation of county officers, and *State ex rel. Sayad v. Zych*, 642 S.W.2d 907 (Mo. banc 1982) having to do with salaries of St. Louis police officers are not in point, except that they hold that the purpose of Art. X, Sec. 21, is to protect local units against increased financial burdens, which are not present here.[3]

■ Utterly without merit is the suggestion that mandamus against the county is not an appropriate remedy. *See* 104.345.2(4)(f)(ii), authorizing mandamus for the very purpose that it is used here. This is a narrow statutory action which exists for a specific purpose. The requirements for the common law extraordinary legal remedy of mandamus do not have to be met. The county is the appropriate respondent because it has the money the relator is seeking. The relator might have made our task easier if it had joined appropriate individuals after the county first raised a challenge, but it did not have to do this. Our holding, of course, has no effect on conventional mandamus law.

The judgments are affirmed. The case is remanded to the trial court for any necessary further action in Case No. 68943.

BILLINGS, C.J., WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., and REINHARD, Special Judge, concur.

DONNELLY, J., not sitting.

---

**3.** The withdrawn opinions in *Harrison v. Monroe County*, 716 S.W.2d 263 (Mo. banc 1986) adduced by the state, are not a part of the case law of the state, even though they became public records when initially handed down. They should not be cited in briefs.