**ST. LOUIS COUNTY, Missouri,**
**Plaintiff–Appellant,**

v.

**MISSOURI STATE EMPLOYEES'**
**RETIREMENT SYSTEM,**
**Defendant–Respondent.**

**No. WD 40435.**

Missouri Court of Appeals,
Western District.

Jan. 31, 1989.

Thomas E. Wehrle, County Counselor, Christopher J. McCarthy, Asst. County Counselor, Clayton, for plaintiff-appellant.

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

Before COVINGTON, Special Judge, Presiding, and NUGENT and GAITAN, JJ.

NUGENT, Judge.

Plaintiff St. Louis County appeals from the circuit court's decision in a declaratory judgment action that allowed defendant Missouri state Employees' Retirement System (MOSERS) $19,966.45 in interest on pension funds due from the county. We affirm.

This suit arose from a dispute between the county and MOSERS about the proper method for determining creditable prior service for circuit court employees whose employment had been transferred from the county to the state. The parties presented the case to the court on stipulated facts. In a decision not before us on appeal, the court ruled that MOSERS had followed the proper procedures for determining the

amount of the county's contribution to MOSERS to cover the cost of the former county employees' pension benefits. The plaintiff county appeals only from that portion of the trial court's judgment that awarded interest on the previously disputed amount.

Until June 30, 1981, St. Louis County employed and paid the deputy circuit clerks and division clerks of the St. Louis County Circuit Court. On July 1, 1981, those employees became state employees under the authority of § 483.245.[1] The state assumed the responsibility for paying salaries to those employees. In another statute the state also assumed the responsibility for paying those employees' pensions. *See* § 104.345.[2] That statute also requires the counties to pay MOSERS an amount of money sufficient to fund the cost of pensions owed to the employees for their creditable prior service to the county. § 104.345.2(4)(a).

MOSERS retained an actuary to determine the amount of St. Louis County's contribution to the pension fund. The actu-

---

**1.** All sectional references are to Revised Statutes of Missouri, 1986.

**2.** Section 104.345 was amended in 1984 to delete subsection 1 and redesignate the remaining subsection numbers so that subsection 3 became subsection 2. The relevant portions of § 104.345, as amended, provide:

. . . .

2. (1) Notwithstanding any other provision of law to the contrary, any person who is a deputy circuit clerk or division clerk on June 30, 1981, and who becomes [a] state employee the next day is a member and entitled to creditable prior service for service rendered to the city of St. Louis or to a county, as the case may be, if:
[the employee follows the procedures outlined in the statute]

. . . .

(3) The amount of such prior creditable service shall be established to the satisfaction of the Missouri state employees' retirement system.

(4)(a) In lieu of the City of St. Louis or a county continuing to be obligated to pay the salary of any such deputy circuit clerk of division clerk who makes application for creditable prior service, the city of St. louis or the particular county shall contribute to the Missouri state employees' retirement system an amount actuarially determined to be sufficient to fund the prior creditable service of those deputy circuit clerks and division clerks who become state

employees on July 1, 1981, and who elect to receive creditable prior service in the manner provided in paragraph (b) of subdivision (1) of this subsection 2;

(b) The amount to be contributed to the Missouri state employees' retirement system by the city or county shall be determined by an actuary employed or retained by the Missouri state employees' retirement system;

. . . .

(e) The amount to be contributed to the Missouri state employees' retirement system shall be paid by the city or county (i) in a lump sum payment during the next fiscal year of the county or city which begins six months or more after the board of the Missouri state employees' retirement system certifies the actuary's determination of the amount of contribution. . . .

(f) . . . (ii) If a county or city fails to make any payment due the Missouri state employees' retirement system within sixty days after the payment is due, the county or city shall become delinquent. The amount of delinquency shall constitute a first lien on the funds of the county or city. The board of the Missouri state employees' retirement system is authorized to compel payment by application for a writ of mandamus. In addition, such delinquency shall be certified by the board to the state treasurer. Until such delinquency, together with regular interest, is satisfied, the state treasurer shall withhold all moneys due the county or city from the state.

ary determined that $1,201,751.99 would be necessary to fully fund MOSERS for the clerks' creditable prior service. On June 10, 1982, MOSERS certified that amount and notified St. Louis County that payment would be due December 31, 1983.

The county disagreed with the method that the actuary had used to determine the amount of the clerks' creditable prior service. The county's pension plan that had previously covered the clerks credited the employees with less service than does the MOSERS plan. The county took the position that it should only be required to compensate MOSERS with funds sufficient to cover pensions for prior service as calculated under the county's pension plan. On January 10, 1983, the county offered to pay that amount, $1,113,543.39. MOSERS rejected the offer, and on June 8, 1983, notified the county that it must pay MOSERS an amount sufficient to fund pensions for the clerks' full amount of prior service. MOSERS demanded that amount, $1,201,-751.99, by December 31, 1983.

On October 20, 1983, the county initiated the instant suit for declaratory judgment, in which it asked the court to determine the proper method for calculating creditable prior service. On January 11, 1984, and again on February 28, the county tendered to MOSERS the undisputed amount, $1,113,543.39. MOSERS rejected the first tender by a letter dated February 27, 1984. In that letter MOSERS told the county that it would not accept less than the full $1,201,751.99, and that if the county failed to pay that amount by February 29, 1984, it would be delinquent and subject to the enforcement provisions provided by § 104.345.2(4)(f)(ii).

On March 1, 1984, MOSERS demanded payment of $1,197,986.73 plus interest from January 1, 1984. That figure reflected a correction of a clerical error in calculating the previously demanded amount. (One employee had been credited with two-hundred-seventy rather than twenty-seven months of prior service). On March 1, MOSERS also instituted the enforcement provisions of § 104.345.2(4)(f)(ii) by requesting that the state treasurer with-

hold all state funds due to the county and by asking the attorney general to institute a mandamus proceeding to compel payment. The county, on March 7, 1984, paid the full amount demanded, including interest, stating, however, that it made the payment under protest and with full reservation of rights. On March 8, MOSERS halted the enforcement process.

The circuit court rendered its judgment based on the county's September 8, 1986, second amended petition and on the facts stipulated by the parties. The court upheld MOSERS method of determining creditable prior service. In the only portion of the judgment before us on appeal, the court denied the county's prayer for return of the $19,966.45 it had paid in interest.

█ The county argues on appeal that it owed no interest because the demanded payment of $1,197,986.73 was not due at the time the county paid it. This argument develops as follows: MOSERS originally certified an amount due of $1,201,751.99, but that amount was incorrect. MOSERS did not certify that the county owed $1,197.986.63 until March 1, 1984. Section 104.345.2(4)(e)(i) provides that payment is not due until the county's fiscal year beginning at least six months following the time when MOSERS certifies the actuarially determined amount. Since the county's fiscal year commences in January, the first fiscal year more than six months after MOSERS' certification would begin January 1, 1985. The county paid the amount due in full on March 7, 1984, therefore, it paid before payment was due; because the payment was not past due, no interest had accrued.

That argument has no merit. The county assumes that a clerical error that caused a .3 percent miscalculation of the amount owed creates sufficient grounds to invalidate a certification based on that amount. Acceptance of that argument would require that we ignore the legislature's obvious purpose in passing § 104.345.2(4)(e).

That section reflects the legislature's judgment that counties subject to § 104.345 would need six months notice to secure necessary appropriations for the fiscal year in which the pension benefits came

due. Here, MOSERS advised St. Louis County that it owed $1,201,751.99 more than eighteen months before the December 31, 1983, due date. That provided the county with ample time to secure the necessary appropriation. The county certainly suffered no prejudice when, two months past the due date, MOSERS demanded $3,700 less than the amount it had certified twenty months earlier. Neither logic nor authority requires that we hold that MOSERS' March 1, 1984, correction of the amount due under § 104.345 invalidated its June 8, 1982, certification. *Cf. Missouri State Employees' Retirement System v. Jackson County*, 738 S.W.2d 118, 120 (Mo. 1987) (en banc) ("It makes no difference that the actuarial computations are not exact.... The requirement is simply that the best computation available be furnished.").

█ Plaintiff St. Louis County argues in the alternative that even if the payment did become due on December 31, 1983, no interest should have accrued until March 1, 1984. It interprets the language of § 104.345.2(4)(f)(ii) to require interest only after a county has exhausted its sixty-day grace period. MOSERS argues that interest accrues from the date payment becomes due. Section 104.345.2(4)(f)(ii) provides in part as follows:

> If a county or city fails to make any payment due the Missouri state employees' retirement system within sixty days after the payment is due, the county or city shall become delinquent.... Until such delinquency, together with regular interest, is satisfied, the state treasurer shall withhold all moneys due the county or city from the state.

As the plaintiff says, the provision requiring payment of interest is ambiguous. Faced with such ambiguity, a court must look to the legislature's purpose in enacting the provision and try to give effect to that purpose. *Household Finance Corp. v. Robertson*, 364 S.W.2d 595, 602 (Mo. 1963) (en banc). The parties both agree that the legislature imposed the payment of interest on delinquencies as a means of obtaining timely payment of pension obligations. The question then becomes how the state may most effectively use interest as an enforcement tool.

The greatest incentive to timely payment occurs when interest accrues from the day the payment becomes due, not the date it becomes delinquent. The statute provides a sixty-day grace period in which a county may pay the matured debt without incurring interest. If a county knows that by withholding payment beyond the grace period it will face interest charges for the entire period, rather than just for that time beyond the sixty-day period, it is more likely to tender payment within the grace period.

The potential savings of administrative costs also weighs in favor of this construction. By providing cities and counties with an incentive to make payment within the sixty-day grace period, the state may avoid the administrative burden of collecting delinquent payments with coercive measures. Once the grace period has expired, the state must bear the administrative costs attendant to seeking a writ of mandamus and to stopping payment of state funds to the city or county.

█ The county also urges us to consider the interpretation given the statute by the agency charged with its administration. *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo.1972) (en banc). From this principle of statutory construction, the plaintiff argues that, since MOSERS demanded no interest until after the grace period, MOSERS interpreted the statute to provide for interest only from the date of delinquency. That argument ignores the fact that MOSERS demanded interest for the entire period once the county had become delinquent. MOSERS' actions comport with our construction of the statute.

█ Finally, the county argues that principles of fundamental fairness preclude charging it with interest for the months of January and February, 1984. Because MOSERS did not certify the correct amount due until March 1, 1984, the county argues, to charge it interest when it did not know the amount due would be unfair. To

support that proposition, the plaintiff cites *Killian Construction Co. v. Tri–City Construction Co.,* 693 S.W.2d 819, 829 (Mo. App.1985), a case stating that prejudgment interest may not be awarded on unliquidated damages.

That argument rests on the assumption that a clerical error in making the actuarial computation rendered the amount due MOSERS unliquidated. Further analysis of *Killian,* however, reveals the principle that when a sum is readily ascertainable by a simple calculation from available records that sum is not unliquidated. *Id.* at 829. Here, the clerical error on which the county relies was easily remedied by a simple calculation based on available records of the employee's prior service.

Moreover, the county did not withhold payment in this case because it disputed the $3,700 difference represented by the clerical error. Rather, it withheld payment in protest of the method by which MOSERS determined creditable prior service—a $90,000 dispute. That the county disputed the amount due does not, however, preclude the award of interest. *Cf. Ehrle v. Bank Building & Equipment Corp. of America,* 530 S.W.2d 482, 497 (Mo.App. 1975) ("Prejudgment interest is the measure of damages for failure to pay money when payment is due, even though the obligor refuses payment because he questions legal liability for all or portions of the claim."). MOSERS, following the procedures established in § 104.345, had properly determined the amount due. *See Missouri State Employees' Retirement System v. Jackson County,* 738 S.W.2d 118, 120 (Mo.1987) (en banc) (approving those procedures). The statute clearly established those procedures, therefore, the amount due was readily ascertainable, and, hence, liquidated. The mere fact that a .3 percent arithmatical miscalculation occurred when MOSERS followed proper methods does not render the amount due unliquidated. The trial court properly upheld the interest charges from the time of the December 31, 1983, due date.

Accordingly, we affirm the judgment of the trial court.

All concur.